# EXHIBIT 1
# Detention Hearing
# Transcript (excerpt)

1

1    UNITED STATES DISTRICT COURT
     MIDDLE DISTRICT OF TENNESSEE
2        NASHVILLE DIVISION

3    UNITED STATES OF AMERICA        )
                                     )
4    VS                             )   No. 3:21-mj-2956
                                     )
5    RONALD McABEE                  )
     _____
6

7        BEFORE THE HONORABLE JEFFERY S. FRENSLEY,

8                 MAGISTRATE JUDGE

9        **TRANSCRIPT OF ELECTRONIC RECORDING**

10              (via video conference)

11               September 8, 2021

12            (Excerpt of Judge's Ruling)

13   _____

14   <u>APPEARANCES:</u>

15   For the Government:      JOSHUA KURTZMAN
                              U.S. Attorney's Office
16                            110 Ninth Ave S., Suite A961
                              Nashville, TN 37203
17

18   For the Defendant:      ISAIAH S. GANT
                              Federal Public Defender's
19                               Office
                              810 Broadway, Suite 200
20                            Nashville, TN 37203

21   _____

22   PREPARED FROM **ELECTRONIC RECORDING** BY:

23   **Roxann Harkins, RPR, CRR**
     Official Court Reporter
24   801 Broadway, Suite A837
     Nashville, TN 37203
25   615.403.8314
     roxann_harkins@tnmd.uscourts.gov

2

**TRANSCRIPT OF ELECTRONIC RECORDING**

**\*\*\***

1
2
3
4          (Excerpt of judge's ruling.)
5          THE COURT:  The Court's heard the proof
6   in this matter.  It's before the Court on the
7   government's motion for detention pending trial in
8   this case.  First of all, I want to thank the lawyers.
9   Appreciate your efforts, as always.  You both did an
10  outstanding job representing your perspectives in the
11  case, and that is very important to the Court.
12          Also want to thank everyone for your
13  patience with the delays associated with completing
14  this hearing.  And so thank you all for working
15  together to make sure that happened.
16          Also want to take a minute to acknowledge
17  Sarah McAbee, Ms. Gray, Mr. Nelson and Mr. Dickson for
18  your presence and appearance here today.  And also the
19  number of character letters that the Court received.
20  I've reviewed all of those letters.  Mr. Gant, just so
21  you know, I've also -- prior to today's hearing, I
22  went back and looked at the videos again and reviewed
23  those as well.
24          To those witnesses who provided
25  testimony, I want to thank you for your patience and

3

1  your participation here.  I'm sure there's just about

2  anywhere you'd rather be than federal court, and so I

3  appreciate you being here.  And thank you for your

4  testimony.  Thank you for your willingness to serve

5  the Court in the capacities that you discussed in your

6  testimony.

7            I want to acknowledge that there are a

8  lot of people who come before this Court who don't

9  have anyone who shows up to support them or stand

10  behind them, and it means a lot to me that you-all

11  have been here and I want you to know that it's

12  recognized and not unnoticed.  So thank you all for

13  that.

14            The Bail Reform Act ordinarily requires

15  that a defendant be released pending trial unless

16  there are no conditions that will reasonably assure

17  the appearance of the person at future court

18  proceedings and the safety of the community.  The

19  Court, as the government notes, is to consider a

20  number of factors, including the nature and

21  circumstances of the offense charged, the weight of

22  the evidence against the defendant, the history and

23  characteristics of the defendant, and the nature and

24  seriousness of the danger posed by the defendant's

25  release.

4

1          In our society, liberty is the norm and

2     detention prior to trial or without trial is the

3     carefully limited exception.  The Court's mindful of

4     the tension between the Bail Reform Act and the

5     presumption of innocence that applies to Mr. McAbee

6     and all individuals accused of criminal offenses.

7          I want to address first the issue of

8     flight.  The government in its motion for detention

9     suggests that Mr. McAbee is a flight risk and that

10    detention would be appropriate for those reasons, as

11    he has this added incentive to flee, as the brief

12    notes -- or compelling incentive, rather, to flee,

13    destroy evidence or intimidate witnesses as noted on

14    page 20 of the government's motion.

15         I don't find that Mr. McAbee poses a

16    significant flight risk in this case.  These events

17    occurred on January the 6th of 2021.  Mr. McAbee

18    apparently came back home to his residence in

19    Tennessee over in Bedford County.  There's no evidence

20    before the Court that he's been anywhere else or tried

21    to fly under cover of night or hide out or stay in a

22    hotel or otherwise avoid law enforcement or anyone

23    else.  It appears he went back to his life as it was

24    before January the 6th and went about living there.

25         Likewise, the evidence suggests that

1    Mr. McAbee was -- continued in the employment of the

2    Williamson County Sheriff's Department until sometime

3    in March of 2021.  So he went back to the same

4    residence, the same employer, the same family members,

5    and there's just no evidence to suggest that he made

6    any action to flee or that he would pose any risk of

7    flight or nonappearance in these court proceedings.

8                Furthermore, the Court believes that

9    there are conditions of release that would reasonably

10   assure his appearance at future court proceedings and

11   that those conditions could be imposed and would

12   adequately assure his presence at future proceedings.

13               Mr. McAbee has been indicted in this case

14   in the District of Columbia, and so probable cause is

15   not at issue.

16               With respect to the issue of

17   dangerousness as a basis for detention, this is a

18   difficult question, no doubt about it.  The videos

19   that the Court has been provided and reviewed in the

20   context of these proceedings are -- there just really

21   aren't enough words to describe how troubling and

22   concerning they are.  And those are just probably mild

23   terms for them.  I think horrific and just -- just

24   awful when you review those.  And it's -- it's

25   certainly understandable to see how that would

1    engender a degree of emotion in not only this decision

2    but any other decisions related to anything that has

3    to do with the events of January 6 at the Capitol.

4              But what I think is really important to

5    make clear for the record here is that the decision

6    that I have to make today is not a decision about

7    whether or not Mr. McAbee engaged in the conduct

8    that's alleged in the indictment or whether or not

9    Mr. McAbee is guilty of the conduct alleged in the

10   indictment or whether or not he should be punished for

11   the conduct that he allegedly engaged in as set forth

12   in the indictment or what punishment he should receive

13   for the conduct he allegedly engaged in as set forth

14   in the indictment.

15             The question I have to decide today is a

16   very narrow and specific question, and that is whether

17   or not there are conditions that will reasonably

18   assure the safety of the community if Mr. McAbee were

19   to be released in this case pending trial.

20             The government's acknowledged, rightfully

21   so, that it would be inappropriate for me to detain

22   Mr. McAbee based solely on his beliefs, to detain him

23   based solely upon the charges that have been brought

24   against him in the indictment or to detain him based

25   upon a belief that he engaged in the conduct that was

1    asserted in the indictment alone.

2                    While that conduct is certainly a factor

3    and a consideration, I don't want to overstate the

4    government's position, detaining him simply because I

5    believe he did what he's charged with is not a

6    sufficient basis to order detention in this case.

7                    Instead, the justification for detention

8    is what's known as preventative detention.  In other

9    words, if I decide to detain him, it's because I

10   belief that he poses a danger to the community between

11   now and the time his case is resolved, and detention

12   is the only way to prevent that danger from occurring.

13                   And that's extremely important because it

14   goes not only to the construction of the statute

15   itself, but it also goes to the fundamental

16   constitutional aspects of which our basis and our

17   system of justice is predicated.

18                   We have a system that presumes innocence,

19   and for me to make a decision where I become judge,

20   jury and executioner all in the same role without

21   affording him the rights he's entitled to under the

22   constitution is inappropriate.  And that's the

23   important distinction between the bond decision and

24   the decision on guilt that will follow at a trial.

25                   It's important to note that in order for

1    a defendant to be preventively detained, the Court

2    must identify an articulable threat posed by the

3    defendant to an individual or to the community.  Now,

4    that threat doesn't have to be physical violence

5    alone.  It could extend to nonphysical harms, but it

6    must be a clearly identified threat.  And the threat

7    must also be considered in context.

8            The determination has to be individually

9    made and, in the final analysis, must be based on

10   evidence before the Court regarding a particular

11   defendant.  And it follows that whether a defendant

12   poses a particular threat depends on the nature of the

13   threat identified and the resources and capabilities

14   of the defendant.

15           That's extremely important because,

16   again, if I were to make this decision based solely on

17   emotion and looking at those videotapes and what's

18   alleged to have occurred, then I would be overstepping

19   the responsibility that I have to make an

20   individualized determination.

21           Similarly, if I were to make a decision

22   based upon what some other judge did for some other

23   defendant based on their individual circumstances, I

24   would be acting contrary to the law.  I have to make

25   an individual decision to determine whether or not

1    Mr. McAbee poses a danger to the community and whether

2    there are any conditions that will reasonably assure

3    the safety of the community if he were to be released,

4    keeping in mind the Supreme Court's admonition that

5    detention is the exception and liberty is the norm.

6              So it's against that backdrop -- and

7    that's a very, very important backdrop.  It's a

8    backdrop that's lost on many people.  Many people see

9    those videos and they say, gosh, I see exactly what he

10   did, he needs to be thrown in jail.  But that's just

11   not the decision that I have to make.  That's a

12   decision for another day in another forum before

13   another fact finder.  My decision today must be

14   whether or not he's a danger to the community and

15   whether or not there are conditions that will

16   reasonably assure the safety of the community.

17             The government's discussed the factors

18   that I have to consider.  And I've considered those

19   factors.  The Court finds the previous court rulings

20   that the government's referenced to be instructive and

21   helpful to those.

22             With regard to the nature and

23   circumstances of the offense charged, the Court must

24   find that the nature and circumstances of the offense

25   charged are serious and would generally warrant

10

1    detention in a case like this.  Mr. McAbee was front

2    and center.  He wasn't a person way back in the crowd

3    or somebody who showed up at the scene after all the

4    damage was done and then just went about his business

5    of whatever it was at the time.

6              But there's also contrary evidence that I

7    have to consider.  There are the statements that

8    Mr. Gant alluded to that suggests that Mr. McAbee

9    wasn't present with an intention to do harm to the

10   officers; rather, he was there to provide aid and

11   assistance to individuals he saw who were in peril.

12   And certainly the video evidence of him providing life

13   support to an individual on the ground would

14   corroborate or substantiate Mr. Gant's position.

15             Likewise, I think it's relevant that,

16   again, without condoning or approving of Mr. McAbee's

17   conduct, the government's presented no evidence of any

18   offensive -- offensive actions on the part of

19   Mr. McAbee here.  Mr. McAbee at one point has a baton,

20   he had a weapon he could use.  He chose not to use

21   that weapon.  There's no evidence that he ever did use

22   it.

23             He had the gloves that he wore, that's

24   the only sort of weapon that the government refers to

25   of him having in the midst of all of this.  But

1    there's no evidence that I saw of him using those

2    knuckles to strike anyone.  What I saw was him push a

3    police officer after the police officer pushed him.

4    Again, not to condone that conduct, but there's a

5    difference in context and degree between Mr. McAbee

6    responding to being pushed, reacting to being pushed

7    as opposed to being the instigator and initiator of

8    the pushing.

9              Similarly, there's the evidence of him

10   over another police officer.  The Court's heard

11   conflicting information about what was happening

12   there.  It's certainly a matter of interpretation, but

13   what I do know is that I never saw him strike that

14   officer or head butt that officer or do anything else

15   that would be an offensive maneuver against that

16   officer apart from being over him.

17             And, again, I'm not saying that him being

18   over him is okay.  I'm saying in context and degree

19   it's something that becomes important to consider in

20   this case, where we're talking about these fine

21   details and points.

22             There's also some suggestion about him

23   using his status as a law enforcement officer to gain

24   entry.  Again, respectfully, I believe that's a bit

25   overstated in the government's motion.  It appears

1   that Mr. McAbee used his law enforcement position to

2   try to gain entry because he was injured and he was

3   trying to get out of the fray, not as a way to get in

4   to cause violence or danger or harm to anyone inside

5   the Capitol.  And I've not been presented with any

6   evidence to the contrary of that.

7                   With respect to the weight of the

8   evidence against the defendant, again, it's important

9   to know that this goes to the weight of the evidence

10  of dangerousness, not the evidence of guilt.  And I

11  think the analysis is essentially the same as that

12  element as it is for the nature and circumstances of

13  the offense charged.

14                  There's also the history and

15  characteristics of the defendant.  And here, according

16  to the bond report, he has no prior record that I

17  would be aware of.  He was in law enforcement, one

18  would suggest -- one would expect that he wouldn't

19  have any prior criminal record or anything of that

20  nature.  The government's presented me with no

21  evidence of any prior dangerousness or violence from

22  his past or history.

23                  He has strong ties to the community.

24  He's married, he has in-laws.  He has the number of

25  folks that I mentioned who came here today to support

13

1    him and stand for him.  And also provided a

2    significant number of letters that speak to his

3    character and the quality of his character.  So I

4    think the history and characteristics of this

5    defendant weigh in favor of release.

6            I will note that his conduct as a law

7    enforcement officer, even just being there and being

8    in the midst of this is, again, concerning.  But I

9    don't think it tips the scales in favor of detention

10   on this particular issue.

11           And then there's the ultimate question,

12   which is the nature and seriousness of the danger

13   posed by the defendant's release.  I think that that

14   determination has to be made in concert between the

15   consideration of the factors, as well as conditions of

16   release that the Court could impose.

17           The government says that the danger that

18   I'm trying to prevent is the danger that Mr. McAbee

19   would engage in this behavior or similar behavior in

20   the future.  They say that because he engaged in the

21   behavior on January the 6th with a belief, knowledge

22   or understanding that it would cost him his job, that

23   that's evidence that he wouldn't comply with my

24   orders.

25           To paraphrase Winston Churchill, the true

1   measure of a civilized society is how it treats those

2   accused of a crime.  And as I mentioned at the outset,

3   it would be extremely easy and certainly

4   understandable for one to want to make a decision

5   about detention based on emotion, based upon what was

6   in those videos and a belief that that deserves to be

7   punished and that he deserves to be detained for

8   those -- those actions.  But that's simply not what I

9   can do and not what the law requires me to do.

10          Notwithstanding my findings with regard

11  to the factors in this particular case, I do not

12  believe that Mr. McAbee poses a future danger to the

13  community if he were to be released between now and

14  the time that he resolves this case.

15          That's based upon the discussion I've

16  already had, and it's also based upon the fact that

17  Mr. McAbee has been effectively in the community with

18  no conditions whatsoever with the same conduct that

19  the government's pointing to now, with the same

20  alleged ideas and motivations that the government

21  points to now for almost eight months.

22          And the government, despite my request

23  that they provide me any evidence that he's presented

24  any sort of a danger to the community, have been able

25  to point to absolutely nothing beyond the events

15

1    around and during January the 6th.

2              And while those events, there will be a

3    reckoning for that and there will be a time at which

4    he is held to account for those and stands trial for

5    those, that's simply not the issue I have to decide

6    today.  And I think that given the fact that he was in

7    the community for the period of time that he's been in

8    the community, that the government's been able to

9    point to absolutely no danger that he's created or

10   caused in the community and the Court's not aware of

11   any and he's done that all with absolutely no

12   conditions on him, that there's reason to believe that

13   he would not pose a danger to the community by his

14   continued release.

15              The government points out the fact that

16   he was unknown to them for a period of time, but as I

17   addressed in the government's motion, on or about

18   May 26, 2021, the FBI was provided information about

19   Mr. McAbee of Roane County, Tennessee, describing

20   where he lived; provided information -- provided the

21   name of his spouse; advised that he worked as a

22   sheriff's deputy and provided the name of a law

23   enforcement agency that he worked for; that he'd

24   relocated to Tennessee; and that he deleted a Facebook

25   account.  May the 26th.  It's not until late August

1    before he's arrested by the government in this

2    particular case.

3            It's not to say the government's position

4    is inappropriate or incredible, but the fact that they

5    knew about him, were able to track down the tips, had

6    the level of specificity of who he was and how he

7    could be found and chose to let him stay out in the

8    community for almost 90 days, I have a hard time

9    believing that the government perceives him to be that

10   much of a threat either, leaving him out when they

11   knew about him during that period of time.

12           The government ultimately obtained an

13   indictment, but certainly there's nothing that

14   prevented them from getting an arrest warrant for him

15   by way of a criminal complaint.  They have done that

16   with other folks charged in these cases.  So I think

17   that that's a consideration and a factor as well that

18   suggests that Mr. McAbee's release does not pose a

19   danger to the community.

20           It's also important to note that while,

21   again, the text messages that I've been provided are

22   troubling and concerning, they really end in January

23   the 10th.  The government didn't provide me with

24   anything else despite having access to his phone that,

25   I would note, he voluntarily provided to them.  And

17

1    there's just simply nothing to support this idea that

2    he's continually affiliated with the Proud Boys or any

3    other antigovernment organization; that he otherwise

4    presents some danger to the community.  And even if

5    the government believes that, they certainly waited a

6    while to decide to go and arrest him.

7              I know those are decisions that the

8    government has to make and I'm not questioning you

9    those, but I think they're important factors and

10   considerations, and I'm giving them the weight that I

11   think that they deserve to be given in this case.

12             So having made that finding, the real

13   question is when I balance those things, those things

14   being my findings with respect to the factors and my

15   finding with respect to the danger I believe he poses

16   prospectively to the community, there are conditions

17   of release that will reasonably assure the safety of

18   the community.

19             Well, the government's identified the

20   danger that they believe is that I guess he's going to

21   participate in some sort of antigovernment overthrow

22   efforts and violence against police officers and law

23   enforcement.

24             There are ways that I can -- there are

25   conditions that I can impose that would safeguard

1    against those things happening.  Mainly, I can impose

2    the condition that he not participate in any of those

3    kinds of activities.  I can order that he submit to

4    electronic monitoring and home detention, and I can

5    provide limitations on his access to the Internet to

6    review similar things of that nature.

7            And the question then becomes, is -- will

8    he comply with those conditions.  The government says

9    he won't because he did what he allegedly did on

10   January the 6th knowing it would implicate his job.

11   Respectfully, I don't think that that's the measure.

12           And to counterbalance that speculation --

13   and as Mr. Gant notes, it's only speculation by the

14   government.  To counterbalance that, I've got all

15   these letters of reference.  I've got Ms. McAbee and

16   Ms. Gray, Mr. Dickson, Mr. Nelson talking about

17   Mr. McAbee in a way that when I balance the

18   government's speculation against the information that

19   Mr. Gant's presented by way of these character

20   witnesses suggests to me that Mr. McAbee would comply

21   with these conditions.

22           And I can impose the conditions when I

23   consider the threat and the context of the threat and

24   the manner in which this threat came to be, I can

25   reasonably assure the safety of the community.  And I

1    can do that free of emotion, without making a judgment

2    about whether he's guilty or not and whether he should

3    be punished or not.  All I have to decide is whether

4    he's a danger to the community and whether there are

5    conditions that will reasonably assure the safety of

6    the community.

7              For all the reasons that I've discussed,

8    I find that there are conditions of release that will

9    reasonably assure the safety of the community; and,

10   therefore, it will be the order of the Court that

11   Mr. McAbee be released subject to the following

12   conditions.

13             The defendant must not violate federal,

14   state or local law while on release.  The defendant

15   must advise the Court or pretrial services in writing

16   before making any change of residence or telephone

17   number.  The defendant must appear in court as

18   required and, if convicted, must surrender as directed

19   to serve a sentence that the Court may impose.

20             Additionally, the defendant will be

21   placed in the custody of Sarah McAbee at their home

22   address.  Ms. McAbee agrees to supervise the

23   defendant, to use every effort to assure his

24   appearance at court proceedings, to notify the Court

25   immediately if he violates the condition of release or

1   is no longer in her custody.  He'll also be required

2   to submit to supervision by and report for supervision

3   to pretrial services as directed.  He is to -- and

4   weekly contacts will be required.  At a minimum he's

5   to continue or actively seek employment.  He is to

6   surrender any passport that he may have to the

7   United States District Court clerk.  He's not to

8   obtain a passport or other international travel

9   documents.

10          He's to abide by the following

11  restrictions on personal association, residence or

12  travel.  It will be within the Middle District of

13  Tennessee and Eastern District of Tennessee unless

14  preapproved by pretrial services.  The defendant may

15  not travel outside of the continental United States

16  without Court approval.

17          The defendant must participate in all

18  future proceedings as directed and the defendant may

19  not go to Washington, DC unless he is appearing for

20  court, meeting with pretrial services or consulting

21  with his attorney.  He is to avoid all contact

22  directly or indirectly with any person who is or may

23  be a victim or witness in the investigation or

24  prosecution, including any codefendant.

25          He's not to possess a firearm or other

1   dangerous device or other weapon.  He's not to use

2   alcohol excessively.  He may not use or unlawfully

3   possess a narcotic drug or other controlled substance

4   defined by law unless prescribed by a licensed medical

5   practitioner.  He's to submit to testing for

6   prohibited substance if required by pretrial services

7   or the supervising officer, and that testing may be

8   used with random frequency, may include urine testing,

9   the wearing of a sweat patch, remote alcohol testing

10   system and/or any form of prohibited substance

11   screening or testing.  And he must not obstruct,

12   attempt to obstruct or tamper with the efficiency and

13   accuracy of prohibited substance screening or testing.

14            And he's to participate in a program of

15   inpatient or outpatient substance abuse therapy and

16   counseling if directed by pretrial services.  He's to

17   participate in the following location restriction

18   program, home detention, meaning he'd be restricted to

19   his residence at all times except for employment,

20   education, religious services, medical, substance

21   abuse or mental health treatment, attorney visits,

22   court appearances, Court-ordered obligations or other

23   activities approved in advance by the pretrial

24   services office or supervising officer.  He's to

25   submit to location monitoring as directed by pretrial

1   services and comply with all the program requirements.

2   He must pay all or part of the cost of the program

3   based on his ability to pay as determined by pretrial

4   services office or supervising officer.

5            He's to report as soon as possible,

6   within 48 hours, to the pretrial services officer

7   every contact with law enforcement personnel,

8   including arrests, questioning or traffic stops.  He's

9   to permit pretrial services to visit him at home or

10  elsewhere at any time and allow the officer to

11  confiscate any contraband in plain view.  He's also to

12  refrain from using any social media or other websites

13  related to insurrection activity.

14           Also need to advise Mr. McAbee of the

15  following penalties and sanctions:  Violating any of

16  the foregoing conditions of release may result in the

17  immediate issuance of a warrant for your arrest, a

18  revocation of your release, an order of detention and

19  a prosecution for contempt of court and could result

20  in imprisonment, a fine or both.

21           While on release if you commit a federal

22  felony offense, the punishment's an additional prison

23  term of not more than 10 years.  And for a federal

24  misdemeanor offense, the additional prison term of not

25  more than one year.  This sentence will be

1    consecutive, meaning in addition, to any other

2    sentence you receive.  It's a crime punishable by up

3    to ten years in prison, $250,000 fine or both to

4    obstruct a criminal investigation, tamper with a

5    witness, victim or informant, retaliate or attempt to

6    retaliate against a witness, victim or informant, or

7    intimidate or attempt to intimidate a witness, victim,

8    juror, informant or officer of the Court.

9           The penalties for tampering, retaliation

10   or intimidation are significantly more serious if they

11   involve a killing or attempted killing.

12           If after release you knowingly fail to

13   appear as the conditions of release require or

14   surrender to serve a sentence, you may be prosecuted

15   for failure to appear or surrender, and additional

16   punishment may be imposed.

17           If you're convicted of an offense

18   punishable by a term of imprisonment of 15 years or

19   more, you'd be fined not more than $250,000,

20   imprisoned not more than ten years or both.  For a

21   misdemeanor you'd be fined not more than $100,000,

22   imprisoned for not more than one year or both.  And

23   any term of imprisonment imposed for failure to appear

24   or surrender will be consecutive to any other sentence

25   that you receive.

1          Ms. McAbee, are you still there?

2          THE DEFENDANT:  Mr. or Ms. McAbee, sir?

3          THE COURT:  Ms. McAbee.  Sarah McAbee.

4          MS. McABEE:  Yes, I am.

5          THE COURT:  Ms. McAbee, I need to ask you

6    a couple of questions.  First, did you hear the

7    conditions of release that I just reviewed?

8          MS. McABEE:  Yes, sir.

9          THE COURT:  Do you agree to supervise

10   Mr. McAbee?

11         MS. McABEE:  Yes, sir.

12         THE COURT:  To use every effort to assure

13   his appearance at all court proceedings?

14         MS. McABEE:  Yes, sir.

15         THE COURT:  And to notify the Court

16   immediately if he violates a condition of release or

17   is no longer in your custody?

18         MS. McABEE:  Yes, sir.

19         THE COURT:  All right.  Very well.  Thank

20   you.

21         Mr. Gant, if you'd have Ms. McAbee

22   execute the document at your convenience, please.

23         Mr. McAbee, I need to ask you some

24   questions as well.  Do you acknowledge you're the

25   defendant in this case and that you're aware of the

1   conditions I just reviewed with you?

2                   THE DEFENDANT:  Yes, Your Honor.

3                   THE COURT:  You promise to obey all

4   conditions of release, to appear as directed and

5   surrender to serve any sentence that might be imposed?

6                   THE DEFENDANT:  Yes, Your Honor.

7                   THE COURT:  And that you're aware of the

8   penalties and sanctions set forth in the document that

9   I just reviewed?

10                   THE DEFENDANT:  Yes, Your Honor.

11                   THE COURT:  Okay.  This will be the order

12  of the Court.  Mr. McAbee will be released subject to

13  these conditions following any processing that may be

14  required by the marshals in this matter.

15                   Mr. Kurtzman, do you have a motion?

16                   MR. KURTZMAN:  Yes, Your Honor.  The

17  government would move the Court to stay the entry of

18  the order you just outlined to allow the United States

19  to appeal.

20                   THE COURT:  How long do you want me to

21  stay it?

22                   MR. KURTZMAN:  Your Honor, we're prepared

23  to file the appeal paperwork today, and then I expect

24  the District Court in DC will pick it up shortly

25  thereafter.  So I'll file the appeal today.  I can't

1   necessarily promise when the DC court will pick it up.

2   I will note that the statute says that must be dealt

3   with promptly, so I would imagine within the next 48

4   hours, if not sooner, once our paperwork is filed on

5   the appeal that the District Court in DC will outline

6   a schedule for hearing that appeal.

7              THE COURT:  I'll stay it until 5 o'clock

8   Friday.

9              MR. KURTZMAN:  Thank you, Your Honor.

10             THE COURT:  Mr. Gant, anything further

11  for Mr. McAbee?

12             MR. GANT:  No, Your Honor.  Thank you

13  much for your patience.

14             THE COURT:  Thank you, everyone.

15  Mr. McAbee, Mr. Gant will explain to you what's

16  happened.  I've entered my order.  But I've agreed to

17  stay my order pending the appeal to the District

18  Court, which the government has indicated they'll be

19  filing today.  And I think that does it.

20             Mr. Kurtzman, anything further from the

21  government's standpoint we need to do today?

22             MR. KURTZMAN:  No, sir.

23             THE COURT:  Mr. Gant, anything else for

24  your client?

25             MR. GANT:  No, Your Honor.  Thank you.

1            THE COURT:  Very good.  Thank you all.

2   We'll be in recess.

3            (End of proceedings.)

1                        **REPORTER'S CERTIFICATE**

2

3          I, Roxann Harkins, Official Court Reporter

4   for the United States District Court for the Middle

5   District of Tennessee, in Nashville, do hereby

6   certify:

7                That I transcribed from **electronic**

8   **recording** the proceedings held via video conference on

9   September 8, 2021, in the matter of UNITED STATES OF

10  AMERICA v. RONALD MCABEE, Case No. 3:21-mj-2956;

11         that said proceedings in connection with the

12  hearing were reduced to typewritten form by me; and

13  that the foregoing transcript is a true and accurate

14  transcript of said proceedings.

15

16         This is the 14th day of September, 2021.

17

18              s/ Roxann Harkins_____
                ROXANN HARKINS, RPR, CRR
19              Official Court Reporter

20

21

22

23

24

25