UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **21-CR-35 (EGS)** |
| | : | |
| **RONALD COLTON MCABEE,** | : | |
| Defendant. | : | |

# GOVERNMENT'S REPLY TO DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION FOR EMERGENCY STAY AND FOR REVIEW AND REVOCATION OF RELEASE ORDER

On September 8, 2021, the United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully moved this Court to, first, stay defendant Ronald Colton McAbee's release pending trial, and second, review the decision by the Magistrate Judge from the Middle District of Tennessee to deny the government's motion for pre-trial detention. The Court granted the government's motion to stay on September 8, 2021 and directed the defendant to file his response by September 13, 2021 (which deadline was later extended until September 14, 2021), and the government to file any reply by September 16, 2021. The government hereby files its reply to the defendant's response.

In support of its reply, the government incorporates the arguments in its previous Motion for Emergency Stay and For Review and Revocation of Release Order filed on September 8, 2021 (ECF No. 108, 21-CR-35 (EGS)) (hereinafter "Government's Emergency Motion").

1

**FACTUAL BACKGROUND**

This Court is already familiar with the factual background of this case from the Government's Emergency Motion. Attached hereto are redacted versions of Exhibits B-G,[1] which were received into evidence at the detention hearing in the Middle District of Tennessee, and a copy of the Order Setting Conditions of Release from the Middle District of Tennessee. The Government has requested the transcript of the full hearing and expects to receive it by the end of the day on Monday, September 20, 2021.

**ARGUMENT**

The defendant is eligible for detention pursuant to § 3142(f)(1)(A) [Crime of Violence] and 3142(f)(1)(E) [Dangerous Weapon] of the federal bail statute. There are four factors under § 3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In consideration of these factors, the government respectfully submits that there remain no conditions or combinations of conditions which can effectively ensure the safety of any other person and the community or the defendant's return to the Court.

1. **Nature and Circumstances of the Offense Charged**

The first factor the Court must consider is the nature and circumstances of the offenses charged, "including whether the offense is a crime of violence." 18 U.S.C. § 3142(g)(1). While all of the offenses arising from the January 6, 2021 breach of the Capitol are serious, Chief Judge

---

[1] Exhibit A is a CD containing clips of four body-worn camera ("BWC") videos. The Government intends to offer those clips into evidence at the hearing scheduled for September 22, 2021 in front of this Court as Government Exhibits 1, 2, 4, and 6a; the full videos have already been provided to defense counsel.

Howell has set forth a number of considerations to differentiate the severity of the conduct of the hundreds of defendants connected to that event. *See United States v. Chrestman*, 2021 WL 765662, at *7 (D.D.C. Feb. 26, 2021). These considerations include whether a defendant: (1) "has been charged with felony or misdemeanor offenses"; (2) "engaged in prior planning before arriving at the Capitol"; (3) carried or used a dangerous weapon during the riot; (4) "coordinat[ed] with other participants before, during, or after the riot"; or (5) "assumed either a formal or a de facto leadership role in the assault by encouraging other rioters' misconduct"; and (6) the nature of "the defendant's words and movements during the riot," including whether he "damaged or attempted to damage federal property," "threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification of the electoral vote count during the riot." *Id.* at *7-8.

The *Chrestman* factors firmly place defendant in the most serious category of offenders. The defendant has been charged with multiple serious felonies, including crimes of violence, that contributed to injuries sustained by police officers who were guarding the Capitol building and grounds on January 6, 2021. Although the defendant claims that he did not engage in "any actual assault," Def. Resp. (ECF No. 113) at 5, the evidence is clear that, at approximately 4:27 p.m., while the defendant had a clear view of his co-defendants and others assaulting uniformed police officers at the entrance to an archway on the Lower West Terrace of the Capitol building (the "Archway"), moved towards the Archway and joined the attack. Officer A.W. had already been pushed to the ground and co-defendant Clayton Ray Mullins had grabbed A.W.'s leg, pulling him away from the Archway and towards a set of steps into the crowd of rioters. The defendant did not attempt to stop Mullins. Instead, he grabbed at A.W.'s leg then his torso, and pushed away and then swung his arms at police officers who tried to come to A.W.'s aid, including C.M. *See*

Exhibits 1, 2, 3, 6a.  The defendant's later attempt to render aid to a rioter in medical distress,[2] *see* Exhibit 6b, does not mitigate his eager entry into and participation in the violent assault of several police officers.

The defendant's words in the days leading up to January 6 and his attire on that day demonstrate that he engaged in prior planning before arriving at the Capitol and that he carried and used a dangerous weapon during the riot: the defendant attempted to purchase metal-knuckled gloves to use on January 6; when he learned that they would not be delivered in time, he asked Associate-1 to procure them for him, and wore them to the Capitol on January 6, 2021.  *See* Ex. B at 4-6, 10-11, 17, 38-39; Emergency Motion at 6 (Ex. 1.1), 7 (Ex. 2.2), 11 (Ex. 5).  He considered bringing an additional makeshift weapon -- a "t handle tire puncture," Ex. B at 4, which is a small concealable tool that can be used to stab someone – and expressed no concern when Associate-1 announced his intention to bring (in addition to his own metal-knuckled gloves) knives, brass knuckles, and a magazine with him to the Capitol, *see id.* at 4-5, 37-38; Ex. C; Ex. D.  He also planned to wear – and did wear – a ballistic vest.  *See* Ex. B at 44; Emergency Motion at 6 (Ex. 1.1), 7 (Ex. 2.2), 9 (Ex. 4.1), 11 (Ex. 5).  As with his co-defendant Jeffrey Sabol, "this amount of prior planning an intentionality 'suggests that [the defendant] was not just caught up in the frenzy of the crowd, but instead came to Washington, D.C. with the intention of causing mayhem and disrupting the democratic process, mandated under the U.S. Constitution, of counting and certifying Electoral College votes.'" *United States v. Sabol*, 21 Cr. 35 (EGS), 2021 WL 1405945, at *10 (D.D.C. April 14, 2021) (citing *Chrestman*, 2021 WL 765662, at *8).  *See also United States v. DeGrave*, 21 Cr. 090 (PLF), 2021 WL 1940536, at * (D.D.C. May 14, 2021) (finding that the defendant's wearing of what the defendant described as "bullet proof clothing" "made clear that

---

[2] And, it should be noted, the defendant did nothing to aid this individual – who was lying on the ground near Officer A.W. – while he was occupied with the assaults of Officers A.W. and C.M.

4

he was dressed in anticipation of confronting and engaging in violence").

Moreover, while the defendant does not appear to have known his co-defendants prior to January 6, 2021, he acted deliberately and dangerously that day, purposefully joining in an ongoing, multi-assailant assault on law enforcement officers, which resulted in injury to those officers, including serious injuries. Indeed, "those who actually assaulted police officers and broke through windows, doors, and barricades, and those who aided, conspired with, planned, or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021).

Accordingly, the nature and circumstances of the defendant's offenses weigh strongly in favor of the defendant's pre-trial detention.

## 2. Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. As noted above and in the Government's Emergency Motion, the defendant was captured on video -- police body worn cameras and those posted to social media -- participating in the attack of law enforcement officers. The defendant was also captured in other photographs and throughout the day on January 6, 2021, where his face is clearly visible and the clothes he is wearing are clearly identifiable. Many of these items were later recovered from his residence. And, the defendant has been identified by multiple former co-workers who are current members of law enforcement.

In addition, the defendant's own words and photos and videos corroborate his involvement in the assaults. On January 7, 2021, the defendant texted a picture of himself smiling and holding a newspaper whose front page displayed an article about the breach of the Capitol to Associate-2.

Ex. E at 1; Ex. F.  He followed up by sending pictures of himself to Associate-2, which depict a bloodied baseball cap, consistent with the hat he was wearing during the assaults described above and a head injury consistent with the below photograph, which appears to have been taken at the Capitol on January 6, 2021:




*Government Exhibit 7*                                                                 *Government Exhibit G*

Ex. E at 3; Ex. G.  The evidence against this defendant is overwhelmingly strong, and accordingly, the weight of the evidence weighs heavily in favor of detention.

3. **Defendant's History and Characteristics**

The government recognizes that many letters of support have been filed on the defendant's behalf[3] and is unaware of any prior convictions.  This is to be expected, as the defendant was previously employed by at least two law enforcement agencies.  This should not, however, provide the Court with any assurance that the defendant will comply with government orders and

---

[3] These letters, which were admitted into evidence during the detention hearing in the Middle District of Tennessee, were filed under seal; the Assistant United States Attorneys in the United States Attorney's for the District of Colombia have not yet been given access to them.

directives.  To the contrary, the defendant committed the charged crimes – offenses involving violent attacks on law enforcement officers, the breach of government buildings, and the attempt to halt lawful government processes – while employed as a sheriff's deputy.  The defendant's occupation invested him with the responsibility to uphold and enforce the law.  It also required an understanding of what constitutes a violation of that law.  Yet, neither prevented the defendant from engaging in the assaultive, criminal conduct described above and in the Emergency Motion.

**4.  Danger to the Community and Flight Risk**

The fourth factor, the nature and seriousness of the danger to any person or the community posed by a defendant's release, also weighs in favor of the defendant's detention.  The charged offenses involve assaultive conduct aimed at stopping the functioning of the United States government.  The defendant used physical force against police officers who were dragged into a violent mob.  And he did so at a time that individuals in a crowd were calling for the police to help them tend to a protestor who was crushed by the mob.

The defendant's own words and conduct demonstrate that this danger persists beyond the events of January 6, 2021.  As he texted to Associate-2 in the days following the attack: "I've shed blood for my country.  By the hands of the swamp.  I will shed much more in the days to come.  But I will not forget the Oath I swore years ago to protect the America I once knew. / necisque libertas [liberty or death]."  Ex. E at 3.  Similarly, while discussing whether the defendant and/or Associate-1 would be attending the inauguration, Associate-1 stated, "Trump will be the one inaugurated," to which the defendant replied, "I call for secession!"  Ex. B at 88.  This statement, coupled with the defendant's display of a black American flag outside his residence until at least the day of his arrest, and his lack of remorse and respect for the life of law enforcement officers, is evidence of his continuing dangerousness.  If released, the

defendant would have even more opportunities to unleash violence against those he views as harmful to the county.

Nor does the timing of the defendant's arrest suggest that the threat he poses has diminished. The fact that the Government chose to continue investigating and build a strong case against the defendant, rather than rushing to make an immediate arrest, should not affect the detention analysis or the Court's determination of the defendant's dangerousness. *United States v. Little*, 235 F. Supp.3d 272, 279 (D.D.C. 2017) ("The Government is permitted to make its own determinations on when to indict a defendant and without evidence of abuse or some facts to support that the delay was due to a lack of danger, the delay does not affect the detention analysis").[4]

Given the above assessment of all four relevant factors, no condition, or combination of conditions, can ensure that the defendant will comply with court orders and abide by appropriate release conditions.

## **CONCLUSION**

Here, McAbee is subject to detention pursuant to 18 U.S.C. §§ 3142(f)(1)(A) [Crime of Violence] and 3142(f)(1)(E) [Dangerous Weapon]. The defendant assaulted two police officers. He grabbed one officer who had already been thrown to the ground and pulled him into a violent mob, where another officer was already being attacked. While wearing metal-knuckled gloves, he swung his arms at another officer, who was attempting to come to the aid of the first. The evidence shows that the defendant is a danger to the community. For the reasons stated herein, the government prosecutes this appeal of Magistrate Judge Jeffrey S. Frensley's decision to release

---

[4] In *Little*, the defendant was involved in a vehicular collision on October 11, 2016, which began the government's investigation; he was then indicted on Dec. 7, 2016 and arrested on January 11, 2017. *Little*, 235 F. Supp.3d at 279. The Court in *Little* rejected the defense's arguments that the purported delay in the defendant's arrest demonstrated that the government did not believe that the defendant was a flight risk or danger to the community.

the defendant.

**WHEREFORE**, the United States respectfully prays this Honorable Court to revoke the order releasing Defendant Ronald Colton McAbee and to order instead that he be held without bond pending trial.

Respectfully submitted,

Channing D. Phillips
Acting United States Attorney

*/s/ Colleen D. Kukowski*
Colleen D. Kukowski / Benet J. Kearney
DC Bar No. 1012458 / NY Bar No. 4774048
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2646  / (212) 637 2260
Colleen.Kukowski@usdoj.gov
Benet.Kearney@usdoj.gov

CERTIFICATE OF SERVICE

I certify that a copy of the Government's Motion for Pretrial Detention was served on all counsel of record via the Court's electronic filing service.

                          */s/ Colleen D. Kukowski*
                          COLLEEN D. KUKOWSKI
                          Assistant United States Attorney

Date:  September 16, 2021