**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

v.

RONALD COLTON MCABEE,

            Defendant.

Crim. Action No. 21-35-7 (EGS)

**MEMORANDUM OPINION**

Defendant Ronald Colton McAbee ("Mr. McAbee") has been
charged in a federal indictment with seven serious offenses
arising from his participation in the events at the U.S. Capitol
on January 6, 2021. *See* Redacted Third Superseding Indictment,
ECF No. 152. Following Mr. McAbee's arrest and two detention
hearings, a magistrate judge in the Eastern District of
Tennessee released Mr. McAbee from custody pending trial. *See*
Rule 5(c)(3) Docs., ECF No. 128 at 24-30.[1] Pending before the
Court is the government's Motion for Review and Appeal of the
Release Order, which requests that Mr. McAbee be detained
pending trial based on the danger he poses to the community. *See*
Gov't's Emergency Mot. to Stay and for Review and Appeal of
Release Order ("Gov't's Mot."), ECF No. 108. Upon careful
consideration of the motion, opposition, and reply thereto, the

---

[1] When citing electronic filings throughout this Opinion, the
Court cites to the ECF page number, not the page number of the
filed document.

arguments set forth at the September 22, 2021 hearing, the
applicable law, and the entire record herein, the government's
motion is **GRANTED.**

**I. Background**

Mr. McAbee is alleged to have forcibly assaulted, resisted,
opposed, impeded, intimidated, or interfered with, and inflicted
bodily injury on, Metropolitan Police Department ("MPD")
officers attempting to maintain the security of the U.S. Capitol
on January 6, 2021. *See* Redacted Third Superseding Indictment,
ECF No. 152 at 5-6. The Third Superseding Indictment charges Mr.
McAbee with the following offenses: (1) one count of Inflicting
Bodily Injury on Certain Officers or Employees and Aiding and
Abetting, in violation of 18 U.S.C. §§ 111(a)(1) and (b) and 2;
(2) one count of Assaulting, Resisting, or Impeding Certain
Officers or Employees, in violation of 18 U.S.C. § 111(a)(1);
(3) one count of Civil Disorder, in violation of 18 U.S.C. §
231(a)(3); (4) one count of Entering or Remaining in any
Restricted Building or Grounds with a Deadly or Dangerous
Weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A);
(5) one count of Disorderly and Disruptive Conduct in any
Restricted Building or Grounds with a Deadly or Dangerous
Weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A);
(6) Engaging in Physical Violence in any Restricted Building or
Grounds with a Deadly or Dangerous Weapon, in violation of 18

U.S.C. §§ 1752(a)(4) and (b)(1)(A); and (7) one count of Act of
Physical Violence in the Capitol Grounds or Buildings, in
violation of 5104(e)(2)(F). *See id.* at 5-12.

The Court sets out below the evidence proffered by the parties
in support of their briefing,[2] as well as an overview of the
procedural history of this case.

**A. Factual Background**

Mr. McAbee is a twenty-seven-year-old former law
enforcement officer who most recently resided in Tennessee. *See*
Gov't's Mot., ECF No. 108 at 13. He worked as a sheriff's deputy
at the Cherokee County, Georgia Sheriff's Office until November
2020 when he moved to the Williamson County, Tennessee Sheriff's
Office, where he stayed until March 2021. *See id.* at 13-14.

In late December 2020, Mr. McAbee began exchanging text
messages with an associate ("Associate-1") concerning plans to
travel to Washington D.C. on January 6, 2021, the date on which
Congress was scheduled to convene in a joint session to certify
the Electoral College vote count for the 2020 Presidential
Election. *See id.* at 11. Mr. McAbee initiated the text message
exchange on December 23, 2020:

Mr. McAbee: Hey buddy. You going to DC on the 6th?

---

[2] At a detention hearing, both parties may present evidence by
way of a proffer. *See* 18 U.S.C. § 3142(f); *United States v.
Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

> Mr. McAbee: I want to go but only if you're going. I'm
> not in shape to fight right now.
>
> Associate-1: Yes sir I sure am!
>
> Mr. McAbee: Let's link up and go. I'll slap a commie
> with this dead arm.
>
> Mr. McAbee: Call me after work.

Gov't's Ex. B, ECF No. 125-1 at 1-2.[3] At that time, Mr. McAbee
was "excused from work" at the Williamson County Sheriff's
Office due to a shoulder injury he had sustained from a recent
car accident. *See* Gov't's Mot., ECF No. 108 at 16.[4]

Over the next few days, Mr. McAbee and Associate-1
continued to exchange text messages. In addition to coordinating
their travel logistics, they discussed the items they would
bring with them to Washington D.C. on January 6, 2021. In text
messages that were exchanged on December 31, 2020, Associate-1
sent Mr. McAbee a photo showing a firearm magazine, a knife, and

---

[3] Because the text message evidence submitted by the government
contains Personal Identifiable Information, the Court granted
leave for those exhibits to be filed under seal and for redacted
versions to be filed on the public docket. *See* Min. Order (Sept.
20, 2021). The Court will cite to the redacted exhibits
throughout this Memorandum Opinion.

[4] According to the government, a medical professional provided
information to the Williamson County Sheriff's Office indicating
that Mr. McAbee underwent a medical examination on December 30,
2020, and "as a result of the exam," he was "excused from work"
from December 30, 2020 to January 14, 2021, which included the
day he participated in the riot at the U.S. Capitol in
Washington, D.C. Gov't's Mot., ECF No. 108 at 16. On January 14,
2021, Mr. McCabe was cleared to return to work with a limitation
on the use of his right shoulder for four weeks. *Id*.

brass knuckles with the message, "That's what I'll carry in my pocket." Gov't's Ex. B, ECF No. 125-1 at 3. The conversation continued:

> Mr. McAbee: How can I get some knuckles
>
> Associate-1: Amazon is quick
>
> Mr. McAbee: So I've got a tire repair kit and the t handle tire puncture is a great tool
>
> Associate-1: Lol this is true!

*Id.* at 4. Associate-1 then sent Mr. McAbee information about "Steel Outdoor Reinforced Brass Knuckle Motorcycle Motorbike Powersports Racing Textile Safety Gloves" that he had "just ordered," and he invited Mr. McAbee to order his own. *Id.* at 5-6. Mr. McAbee responded, "Alright, I'll shop around." *Id.* at 6. Later, Mr. McAbee informed Associate-1 that Amazon would not be able to deliver the metal-knuckled gloves he had ordered in time, and he asked Associate-1 if he could "buy those gloves in a medium and I pay you back?" *Id.* at 17. Associate-1 replied, "I got them." *Id.* at 18.

On January 3, 2021, Associate-1 sent Mr. McAbee a text message that said, "Ready to roll" and contained a photo showing two knives, brass knuckles, and metal-knuckled gloves displayed on a kitchen counter. *Id.* at 37. Mr. McAbee responded, "Damn. My Arsenal doesn't look that good." *Id.* at 38. Associate-1 reassured Mr. McAbee that he would "have gloves for you

tomorrow," *id.*; and he also told Mr. McAbee that he had "extra knives," *id.* at 39.

Mr. McAbee and Associate-1 discussed the potential threat of violence in Washington, D.C. on January 6, 2021, throughout the course of their text message conversations. During their exchange on December 31, 2020, Mr. McAbee explained to Associate-1 that he did not want certain individuals to travel with them to Washington, D.C. because he did not think they "should be subject to violence," and violence "w[ould] be there." *Id.* at 9. Other messages further demonstrate that Mr. McAbee anticipated engaging in violence on January 6, 2021:

> Associate-1: I had to explain to [my child] last night why I was going to DC and what could happen. This is my fight so he doesn't have to fight.

> Mr. McAbee: I will rise or fall along side you. This is for future generations.

*Id.* at 14-15.

Mr. McAbee and Associate-1 traveled together to Washington D.C. as planned. Evidence proffered by the government shows that Mr. McAbee was at the U.S. Capitol on January 6, 2021, wearing black gloves with hard, metal knuckles and a black tactical vest with one patch that read "SHERIFF" and another with insignia associated with the "Three Percenters."[5] *See* Gov't's Mot., ECF

---

[5] The government describes the Three Percenters as a loosely organized collection of individuals and militia group members who consider themselves analogous to the American colonists who

No. 108 at 12; *see also* Gov't's Ex. 4.2, ECF No. 108 at 11. He also wore a red "Make America Great Again" baseball hat, a red face scarf, white sunglasses, and a black shirt with white lettering that read "DIFFERENT GENERATION." *Id.*

Shortly before 4:30 p.m. that afternoon, Mr. McAbee was present among a mob of hundreds of rioters who had gathered near the archway and stairs leading to the U.S. Capitol building's Lower Western Terrace. *Id.* More than two hours earlier, at around 2:00 p.m., protesters who had gathered in a crowd outside of the U.S. Capitol forced entry into the building. *Id.* at 3. Soon after, members of Congress, including the President of the Senate, Vice President Mike Pence, were evacuated, and the Congressional certification of the vote count of the Electoral College of the 2020 Presidential Election was effectively suspended. *Id.* at 4. The rioting continued for the next few hours, with more individuals entering the U.S. Capitol and others engaging in confrontations with law enforcement officers on the grounds outside. *Id.*

Starting at approximately 4:27 p.m., video footage shows rioters who were gathered near the archway leading to the Lower

---

took up arms during the American Revolution. *See* Gov't's Mot., ECF No. 108 at 12. They believe that only three percent of American colonists took up arms against the British, and just as a small group of colonists could overthrow the British, so too can the Three Percenters overthrow the U.S. government. *Id.*

Western Terrace, including Mr. McAbee and his codefendants, engaged in "brutal[] assault[s]" on at least three MPD Officers—Officers A.W., B.M., and C.M. *See id.* at 4-11; *see generally* Gov't's Video Exs. 1-4. The video footage depicts members of the mob throwing and swinging various objects at the MPD officers while other rioters overran the officers, struck them with various weapons, knocked some of them to the ground, and dragged them down the stairs and further into the mob. *Id.*

Mr. McAbee was an active participant in the assault. After other rioters—including codefendants Jeffrey Sabol and Jack Wade Whitton—knocked Officer A.W. to the ground, kicked and hit him, and took his police baton, Mr. McAbee—wearing metal-knuckled gloves and carrying a black baton—entered the archway, grabbed Officer A.W. by his left leg and torso as codefendant Clayton Ray Mullins grabbed the officer's right leg, and pulled him further toward the stairs and the large crowd of rioters gathered there. *See* Gov't's Mot., ECF No. 108 at 5-6, 10; *see also* Gov't's Video Ex. 1 at 00:40-00:54; Gov't's Video Ex. 2 at 00:29-00:39. By that time, Mr. Sabol and Mr. Whitton had already succeeded in pulling another officer, Officer B.M., out of the archway, down the stairs, and into the crowd of rioters where codefendant Peter Stager had begun hitting Officer B.M. with a flagpole and other rioters kicked and hit him. *See* Gov't's Mot., ECF No. 108 at 5.

8

After Mr. McAbee first grabbed Officer A.W. and pulled him toward the stairs, he remained positioned over Officer A.W. and screamed at other officers under the archway who were trying to assist the officers and rioters who had been knocked to the ground. *Id.* at 6; *see also* Gov't's Video Ex. 1 at 00:48-00:54; Gov't's Video Ex. 2 at 00:29-00:39. Officer C.M. then moved forward toward Mr. McAbee and pushed and hit him with a police baton. Gov't's Mot., ECF No. 108 at 7; *see also* Gov't's Video Ex. 1 at 00:54-01:00. Mr. McAbee then stood upright and swung his arms at Officer C.M. while screaming profanities. *See* Gov't's Mot., ECF No. 108 at 7; *see also* Gov't's Video Ex. 1 at 01:00-01:06; Gov't's Video Ex. 2 at 00:39-00:50; Gov't's Video Ex. 4 at 00:30-00:58.

When codefendant Michael Lopatic stepped in and charged at and began repeatedly punching Officer C.M., Mr. McAbee turned his attention back to Officer A.W. who was still lying on the ground. *See* Gov't's Mot., ECF No. 108 at 8. Mr. McAbee stood directly over Officer A.W., bent over, and grabbed him by his torso. *See* Gov't's Video Ex. 4 at 00:58-01:04. He then dragged Officer A.W. out of the archway, and the two tumbled together down the stairs and into the mob. *See id.*; *see also* Gov't's Video Ex. 3 at 00:42-00:45. For the next twenty-five seconds, Mr. McAbee was positioned over Officer A.W. as the officer was lying on his back at the bottom of the stairs. *See* Gov't's Video

Ex. 4 at 01:04-01:20; *see also* Gov't's Video Ex. 3 at 00:42-01:10. Once Officer A.W. was no longer pinned down, he eventually made his way out of the crowd, but while he was in the mob, he was "kicked, struck with poles, and stomped on by several individuals," his helmet was ripped off, he was stripped of his baton and his MPD-issued cell phone, and he was maced while his helmet was off. Gov't's Mot., ECF No. 108 at 10. He was later taken to the hospital and treated for a laceration on his head which required two staples to close. *Id.*

A few minutes after these incidents took place, the government proffers that Mr. McAbee "was part of a group of rioters who attempted to render aid to another rioter who was in medical distress and helped to carry/drag that rioter to the entrance of the Archway." *Id.* at 16; *see also* Gov't's Video Ex. 6b. Once under the archway, Mr. McAbee bent down over the individual in medical distress and joined another rioter trying to provide medical assistance. *Id.* Shortly thereafter, the crowd of rioters behind Mr. McAbee surged back into the archway, pushing him forward toward the officers and into the side of the archway, aggravating his preexisting shoulder injury. *Id.* at 16-17. As Mr. McAbee tried to get away from the surging crowd and through the police line, he pointed to the lettering on his vest that said "SHERIFF" as he asked to be let through. *Id.*

After January 6, 2021, Mr. McAbee communicated with associates via text message, and the government has acquired those communications. On January 7, 2021, Mr. McAbee sent a text message to Associate-1 that contained a picture of himself smiling and holding a newspaper that displayed the large and bolded headline, "INSURRECTION." Gov't's Ex. B, ECF No. 125-1 at 71. He sent the same picture to another individual, whom the government has named Associate-2. *See* Gov't's Reply, ECF No. 116 at 5-6 (citing Gov't's Ex. E, ECF No. 125-4 at 1; Gov't's Ex. F, ECF No. 125-5). On January 8, 2021 Mr. McAbee sent Associate-2 three additional photographs, which showed a bloodied baseball hat and a head injury. *See* Gov't's Reply, ECF No. 116 at 6; Gov't's Ex. E, ECF No. 125-4 at 3. Accompanying those photographs was a text message from Mr. McAbee that read:

> I've shed blood for my country. By the hands of the swamp. I will shed more in the days to come. But I will not forget the Oath I swore years ago to protect the America I once knew.

Gov't's Ex. E, ECF No. 125-4 at 3. Then on January 10, 2021, Mr. McAbee sent a message to Associate-1 that said, "I call for secession!" in response to Associate-1's comment that "Trump will be the one inaugurated." Gov't's Ex. B, ECF No. 125-1.

Subsequently, law enforcement officers identified Mr. McAbee as a participant in the January 6, 2021 events at the U.S. Capitol. *See* Gov't's Mot., ECF No. 108 at 12-16.

**B. Procedural History**

On August 17, 2021, Mr. McAbee was arrested in Nashville, Tennessee pursuant to a warrant issued on August 5, 2021, by a magistrate judge in this District. *See* Arrest Warrant Returned Executed, ECF No. 99. On the day of his arrest, Mr. McAbee had an initial appearance in the United States District Court for the Eastern District of Tennessee, at which time the government moved for Mr. McAbee to be detained pretrial. *See* Gov't's Mot., ECF No. 108 at 2. Magistrate Judge Jeffrey S. Frensley then held detention hearings on August 26, 2021, and September 8, 2021. *Id.* at 18. Magistrate Judge Frensley ordered Mr. McAbee released to home detention, which restricted him to his residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office. *See* Release Order, ECF No. 116-1 at 2. The Release Order also required the following of Mr. McAbee, among other standard conditions: (1) not to travel to the District except for case-related obligations; (2) not to travel outside of Tennessee without approval from pretrial services; (3) not to contact anyone who may be a victim or witness in this case; (4) not to possess a firearm; and (5) to refrain from social media or websites regarding insurrection activity. *Id.*

12

The government orally moved in magistrate court for a stay of Mr. McAbee's release pending an appeal of the Release Order, and Magistrate Judge Frensley granted a two-day stay. *See* Gov't's Mot., ECF NO. 108 at 18-19. The government then filed an emergency motion in this Court for review of the Release Order and for a stay of the Release Order through the resolution of the government's appeal. *Id.* The Court granted the stay, set a briefing schedule, and scheduled a motion hearing, which was held on September 22, 2021. *See* Min. Order (Sept. 8, 2021).

## II. Legal Standard

The Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, provides that a hearing shall be held to determine whether a defendant should be detained pretrial upon a motion by the government if the defendant is charged with an offense falling in one of five enumerated categories. 18 U.S.C. § 3142(f)(1)(A)-(E).[6] If a detention hearing is held pursuant to Section 3142(f), a judicial officer may detain a defendant pending trial if the judicial officer determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the

---

[6] As relevant here, a detention hearing shall be held pursuant to Section 3142(f)(1)(A) if a defendant is charged with a "crime of violence," or pursuant to Section 3142(f)(1)(E) if a defendant is charged with any felony that is not otherwise a crime of violence that involves the possession or use of any dangerous weapon. 18 U.S.C. § 3142(f).

community." *Id.* § 3142(e). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir. 2021) (quoting *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019)). Certain conditions and charged offenses trigger a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any person and the community. 18 U.S.C. § 3142(e)(2)-(3).[7] Where there is no rebuttable presumption of detention, the Court considers the following factors to determine whether detention is required to ensure the appearance of the person and the safety of any other person and the community:

> 1. The nature and circumstances of the offense charged, including whether the offense is a crime of violence;
> 2. The weight of the evidence;

---

[7] Offenses triggering a rebuttable presumption under subsection (e)(3) include the following: "(A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act . . . the Controlled Substances Import and Export Act . . ., or chapter 705 of title 46; (B) an offense under section 924(c), 956(a), or 2332b of this title; (C) an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed; (D) an offense under chapter 77 of this title for which a maximum term of imprisonment of 20 years or more is prescribed; or (E) an offense involving a minor victim under section 1201, 1591, 2241, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425 of this title." 18 U.S.C. § 3142(e)(3)(A)-(E).

> 3. The history and characteristics of the person, including
>> A. The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> B. Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release; and
> 4. The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g); see also Munchel, 991 F.3d at 1279-80. Where, as here, the Government argues that the basis for pretrial detention is the defendant's danger to the community, the government is required to demonstrate the appropriateness of detention pursuant to subsection (e), in consideration of the subsection (g) factors, by clear and convincing evidence. See 18 U.S.C. § 3142(f).

When a magistrate judge holds a detention hearing and orders a defendant released pending trial, the government "may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145(a)(1). Although the District of Columbia Circuit (the "D.C. Circuit") has not squarely decided the issue of what standard of review a district court should apply to review of a magistrate's detention or

release order, *see Munchel*, 991 F.3d at 1280; courts in this district have routinely held that such detention decisions are reviewed *de novo*. *See United States v. Hunt*, 240 F. Supp. 3d 128, 132-33 (D.D.C. 2017); *United States v. Chrestman*, 525 F. Supp. 3d 14, 23 (D.D.C. 2021) (collecting cases).

## III. Analysis

### A. Mr. McAbee is Eligible for Pretrial Detention Pursuant to 18 U.S.C. § 3142(f)(1)

Under the Bail Reform Act, unless a defendant poses a serious risk of flight or of attempting to obstruct justice—which the government does not argue in this case—the defendant is only eligible for pretrial detention if he is charged with an offense listed in one of the five enumerated categories of Section 3142(f)(1)—*i.e.*, "the most serious" crimes. *See* 18 U.S.C. § 3142(f)(1)(A)-(B), (f)(2); *United States v. Singleton*, 182 F.3d 7, 13 (D.C. Cir. 1999) ("Congress limited pretrial detention of persons who are presumed innocent to a subset of defendants charged with crimes that are 'the most serious' compared to other federal offenses." (quoting *United States v. Salerno*, 481 U.S. 739, 747 (1987)).

Here, Mr. McAbee does not dispute the government's argument that he is eligible for pretrial detention pursuant to 18 U.S.C. §§ 3142(f)(1)(A) (for having been charged with a "crime of violence") and (E) (for having been charged with a felony that

16

involves the possession or use of any dangerous weapon). *See*
Gov't's Mot., ECF No. 108 at 20; *see generally* Def.'s Opp'n, ECF
No. 113. Mr. McAbee's charged offenses include, among others,
Inflicting Bodily Injury on Certain Officers or Employees and
Aiding and Abetting in violation of 18 U.S.C. §§ 111(a)(1) and
(b), and 2. *See* Redacted Third Superseding Indictment, ECF No.
152 at 3. For the reasons the Court set out in its Memorandum
Opinion regarding codefendant Jeffrey Sabol's request for
pretrial release, *United States v. Sabol*, 534 F. Supp. 3d 58,
67-69 (D.D.C. 2021); a defendant charged under 18 U.S.C. §
111(a)(1) and (b) is charged with a crime of violence, *see*
*United States v. Kendall*, 876 F.3d 1264, 1270 (10th Cir. 2017);
*United States v. Taylor*, 848 F.3d 476, 492-493 (1st Cir. 2017);
*United States v. Juvenile Female*, 566 F.3d 943, 948 (9th Cir.
2009); making him eligible for pretrial detention, *see* 18 U.S.C.
§ 3142(f)(1)(A).

## B. **No Condition or Combination of Conditions Will Reasonably Assure the Safety of Any Other Person and the Community**

Having found that Mr. McAbee is eligible for pretrial
detention pursuant to 18 U.S.C. §§ 3142(f)(1), the Court must
determine whether he poses a risk of flight or a danger to the
community that cannot be mitigated by any combination of
pretrial release conditions. *See* 18 U.S.C. § 3142(e)(1). If the
Court finds that "no condition or combination of conditions will

17

reasonably assure the appearance of [Mr. McAbee] as required and the safety of any other person and the community," the Court "shall order" the detention of Mr. McAbee pending trial. *Id.*

The government does not argue that Mr. McAbee is a flight risk, so the Court will focus its inquiry on whether Mr. McAbee must be detained pretrial based on his potential dangerousness. For this inquiry, the Court "must identify an articulable threat posed by the defendant to an individual or the community," though "[t]he threat need not be of physical violence, and may extend to 'non-physical harms such as corrupting a union.'" *Munchel*, 991 F.3d at 1283 (quoting *United States v. King*, 849 F.2d 485, 487 n.2 (11th Cir. 1988)). "The threat must also be considered in context," and "[t]he inquiry is factbound." *Id.* (citing *United States v. Tortora*, 922 F.2d 880, 888 (1st Cir. 1990)). The Court considers the 18 U.S.C. § 3142(g) factors: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g).

In consideration of these requisite factors, as set forth below, the Court concludes that clear and convincing evidence supports a finding that no condition or combination of conditions will reasonably assure the safety of the community.

18

Accordingly, the Court revokes the magistrate's Release Order and orders Mr. McAbee detained pending trial.

### 1. Nature and Circumstances of the Offense

The first factor the Court must consider is the nature and circumstances of the offense charged, "including whether the offense is a crime of violence." 18 U.S.C. § 3142(g)(1). Despite the serious and unsettling nature of the events that transpired at the U.S. Capitol on January 6, 2021, the D.C. Circuit has made clear that detention is not appropriate in all cases involving defendants who participated in the events. *See Munchel*, 991 F.3d at 1283-84. The Court therefore considers the nature and circumstances of the specific offenses and underlying conduct with which Mr. McAbee is charged. *Chrestman*, 525 F. Supp. 3d at 25-26. The Court must "adequately demonstrate that it considered whether [Mr. McAbee] pose[s] an articulable threat to the community in view of [his] conduct on January 6, and the particular circumstances of January 6." *Munchel*, 991 F.3d at 1283.

To aid in this consideration, the Court analyzes Mr. McAbee's conduct using the following six-factor framework Chief Judge Howell set out in *Chrestman*: (1) whether the defendant has been charged with felony or misdemeanor offenses; (2) the extent of the defendant's prior planning; (3) whether the defendant used or carried a dangerous weapon; (4) evidence of coordination

19

with other protestors before, during, or after the riot; (5)
whether the defendant assumed a formal or de facto leadership
role in the events of January 6, 2021, for example "by
encouraging other rioters' misconduct" "to confront law
enforcement"; and (6) the defendant's "words and movements
during the riot"—*e.g.*, whether the defendant "remained only on
the grounds surrounding the Capitol" or stormed into the Capitol
interior, or whether the defendant "injured, attempted to
injure, or threatened to injure others." *Chrestman*, 525 F. Supp.
3d at 26-27. These factors, "[t]aken together, as applied to a
given defendant, . . . are probative of 'the nature and
circumstances of the offense charged,' 18 U.S.C. § 3142(g)(1),
and, in turn, of the danger posed by the defendant," as relevant
to the fourth Section 3142(g) factor. *See id*. at 27. These
factors "offer a useful framework through which to contextualize
the nature and circumstances of offenses committed at the U.S.
Capitol on January 6, 2021," and "the comparative severity of
defendant's alleged conduct is assessed against this backdrop."
*Id*.

At least four of the *Chrestman* factors support a finding
that Mr. McAbee's comparative culpability in relation to fellow
Capitol Riot defendants is high.

First, a federal grand jury concluded that the government
has sufficient evidence to charge Mr. McAbee with serious felony

offenses. *See* Redacted Third Superseding Indictment, ECF No.
152. "Felony charges are by definition more serious than
misdemeanor charges; the nature of a felony offense is therefore
substantially more likely to weigh in favor of pretrial
detention than the nature of a misdemeanor offense." *Chrestman*,
525 F. Supp. 3d at 26. Moreover, Section 3142(g)(1) specifically
directs the Court to consider whether a defendant has been
charged with crimes of violence, 18 U.S.C. § 3142(g)(1); and Mr.
McAbee's offenses include crimes of violence: he has been
charged with assaulting and inflicting bodily injury on a MPD
officer who was tasked with protecting the U.S. Capitol, and he
has also been charged with engaging in physical violence with a
deadly or dangerous weapon on restricted grounds, *see* Redacted
Third Superseding Indictment, ECF No. 152 at 5, 9. The
government has proffered evidence of Mr. McAbee observing and
then joining his codefendants and other rioters in violent
assaults against MPD officers positioned at the entrance of the
archway on the Lower Western Terrace of the U.S. Capitol on
January 6, 2021. *See* Gov't's Reply, ECF No. 116 at 3. The
alleged conduct underlying the serious felony offenses with
which Mr. McAbee is charged—including forcibly dragging a MPD
officer into a violent mob of rioters who ultimately punched,
kicked, and hit him, causing a head laceration and other
injuries—is chilling. "The gravity of [Mr. McAbee's] charged

felonies thus 'weighs heavily in favor' of pretrial detention."
*United States v. Brown*, CR No. 21-mj-565 (ZMF)(RC), 2021 WL
4033079, at *4 (D.D.C. Sept. 3, 2021) (quoting *United States v.
Caldwell*, CR No. 21-181 (CKK), 2021 WL 2036667, at *7 (D.D.C.
May 21, 2021)).

The second *Chrestman* factor—the extent of the defendant's
prior planning, "for example, by obtaining weapons or tactical
gear," *Chrestman*, 525 F. Supp. 3d at 26—also weighs in favor of
continued pretrial detention. The government argues that Mr.
McAbee's "words in the days leading up to January 6 and his
attire on that day demonstrate that he engaged in prior planning
before arriving at the Capitol." Gov't's Reply, ECF No. 116 at
4. The government's evidence shows that Mr. McAbee coordinated
his trip to Washington D.C. with Associate-1; he discussed
various weapons he and/or his associate might bring to the U.S.
Capitol, including a "t-handle tire puncture," knives, brass
knuckles, and a magazine; and he procured metal-knuckled gloves
that he then wore on January 6, 2021, during the riot. *See*
Gov't's Reply, ECF No. 116 at 4 (citing Gov't's Ex. B, ECF No.
125-1 at 4-6, 10-11, 17, 38-39). Mr. McAbee has not disputed
these facts. *See generally* Def.'s Opp'n, ECF No. 113. This
amount of prior planning and intentionality "suggests that he
was not just caught up in the frenzy of the crowd, but instead
came to Washington, D.C. with the intention of causing mayhem

and disrupting the democratic process." *Chrestman*, 525 F. Supp.
3d at 26; *see also Sabol*, 534 F. Supp. 3d at 73 (rejecting
defendant's "argument that he did not plan to commit violence"
when he "brought tactical gear, including a helmet, steel-toe
boots, zip ties, a radio and an ear piece" to the rally); *United
States v. DeGrave*, 2021 WL 1940536, at *10 (D.D.C. May 14, 2021)
(finding that the defendant's decision to wear "bullet proof
clothing," as he described it when planning for January 6, 2021,
"made clear that he was dressed in anticipation of confronting
and engaging in violence").

The third *Chrestman* factor—whether the defendant carried or
used a dangerous weapon—also weighs in favor of pretrial
detention. The government's evidence establishes that Mr. McAbee
wore metal-knuckled gloves on both hands and that he held a
black baton for at least a short time when he entered the
ongoing, violent confrontation between rioters and MPD officers
under the Lower Western Terrace archway. *See, e.g.*, Gov't's
Video Ex. 1 at 00:40-00:54; Gov't's Video Ex. 2 at 00:29-00:39.
But Mr. McAbee has asked the Court to consider the magistrate's
finding that he "chose not to use" the baton. Def.'s Opp'n, ECF
No. 113 at 4 (citing Hr'g Tr., Def.'s Opp'n Ex. 1, ECF No. 113-1
at 2). Counsel for Mr. McAbee further argued at the September
22, 2021 hearing that the government has not provided any

evidence that Mr. McAbee used either the baton or the metal-knuckled gloves.[8]

The Court agrees that the government's evidence does not support a finding that Mr. McAbee used any weapon during the riot, but the Court remains troubled by Mr. McAbee having armed himself at all. As Chief Judge Howell observed, "a defendant's *carrying* or use during the riot of a dangerous weapon . . . indicates at least some degree of preparation for the attack and an expectation that the need to engage in violence against law enforcement or, indeed, the Legislative branch, might arise." *Chrestman*, 525 F. Supp. 3d at 26 (emphasis added). The text messages that Mr. McAbee exchanged with Associate-1 before January 6, 2021 reinforce that he anticipated encountering and participating in violence. *See* Gov't's Ex. B, 125-1 at 9, 14-15 (stating that violence "would be there" on January 6, 2021, and he would "rise or fall alongside" Associate-1 in the "fight"). With the understanding that violent confrontations would take place at the U.S. Capitol on January 6, 2021—where Congress would be convened to certify the Electoral College vote count for the 2020 Presidential Election and supporters of former-President Donald J. Trump would converge to protest the results of the election—Mr. McAbee went to the U.S. Capitol with metal-

---

[8] A transcript of the hearing has not yet been made available on the public docket.

knuckled gloves and a ballistic vest. *See* Gov't's Mot., ECF No. 108 at 20-21. Then, once Mr. McAbee was at the U.S. Capitol and after rioters had breached the building and engaged in multiple hours of violent confrontations with law enforcement officers, he kept the gloves on, joined an ongoing attack on MPD officers in the Lower Western Terrace archway, and picked up another weapon, the black police baton. *Id.* Even if Mr. McAbee did not use the gloves or the baton while assaulting officers, his decision to carry those weapons knowing he would be involved in a violent riot demonstrates his willingness to engage in violent conduct to advance his political views and, thus, his dangerousness to the community. *See Sabol*, 534 F. Supp. 3d at 74 (finding that, though defendant did not use a police baton he took from an officer on January 6, 2021, "the fact that he took the weapon from a vulnerable MPD officer and subsequently wielded it while helping drag another officer into the violent mob" was sufficient to find that the third *Chrestman* factor weighed in favor of detention).

The fourth *Chrestman* factor—evidence of coordination with other protestors before, during, or after the riot—is not strongly implicated in this case. The government concedes that Mr. McAbee does not appear to have known his codefendants before January 6, 2021. *See* Gov't's Reply, ECF No. 116 at 4. And although the government presents some evidence that suggests Mr.

McAbee supported anti-government groups, *see* Gov't's Mot., ECF
No. 108 at 17-18 (noting patches and clothing Mr. McAbee wore or
owned that had insignias associated with the Three Percenters);
the Court agrees with the magistrate's finding that the record
contains "nothing to support the idea that he's continually
affiliated with the Proud Boys or any other antigovernment
organization," Def.'s Opp'n, ECF No. 113 at 4. The Court also
concludes that the record contains no evidence that Mr. McAbee
coordinated with such groups in any way that would show he
"acted deliberately to amplify and assure the success of the
breach of the Capitol." Chrestman, 525 F. Supp. 3d at 26-27.
Therefore, the fourth Chrestman factor does not weigh in favor
of pretrial detention for Mr. McAbee.

The fifth *Chrestman* factor—whether the defendant assumed a
formal or de facto leadership role in the events of January 6,
2021—is also not implicated in this case, as the government has
not alleged that Mr. McAbee led other rioters during the
assaults on law enforcement or at any other time on January 6th.

Finally, the sixth *Chrestman* factor—defendant's words and
movements during the riot—strongly supports continued detention.
The Court first considers the parties' differing descriptions of
Mr. McAbee's conduct on January 6, 2021: the government
describes Mr. McAbee's "eager entry into and participation in
the violent assault of several police officers," Gov't's Reply,

ECF No. 116 at 4; while Mr. McAbee insists that he "did not
engage in any actual assault," Def.'s Opp'n, ECF No. 113 at 5.
In the government's view:

> the evidence is clear that, at approximately 4:27 p.m.,
> while the defendant had a clear view of his co-defendants
> and others assaulting uniformed police officers at the
> entrance to an archway on the Lower Western Terrace of
> the Capitol building ("Archway"), [he] moved towards the
> Archway and joined the attack. Officer A.W. had already
> been pushed to the ground and co-defendant Clayton Ray
> Mullins had grabbed A.W.'s leg, pulling him away from
> the Archway and towards a set of steps into the crowd of
> rioters. The defendant did not attempt to stop Mullins.
> Instead, he grabbed at A.W.'s leg then his torso, and
> pushed away and then swung his arms at police officers
> who tried to come to A.W.'s aid, including C.M.

Gov't's Reply, ECF No. 116 at 3-4 (citing Gov't's Reply, Exs. 1,
2, 3, and 6a). After Mr. McAbee "attacked" the officer who had
come to aid Officer, A.W., the government proffers that Mr.
McAbee "returned to [Officer] A.W., dragging him into the mob,
pinning him down, and contributing to the significant injuries
that [Officer] A.W. sustained and for which A.W. had to seek
medical treatment." Gov't's Mot., ECF No. 108 at 20-21.
According to Mr. McAbee, on the other hand, the government's
version of events includes "'facts' [that] are not actually
true" and "overstatement of [Mr.] McAbee's conduct." Def.'s
Reply, ECF No. 113 at 3.

Magistrate Judge Frensley's findings favor Mr. McAbee's
version of events. The magistrate concluded that while the
nature and circumstances of the offenses charged "are serious

and would generally warrant detention in a case like this," none of the government's evidence showed Mr. McAbee took "offensive action," and other evidence suggests that he may have been in the area during the assaults on the MPD officers to "provide aid and assistance to individuals he saw who were in peril." Hr'g Tr., Def.'s Opp'n Ex. 1, ECF No. 113-1 at 11. Judge Frensley observed that Mr. McAbee did not choose to use his metal-knuckled gloves or the baton, he only swung at Officer C.M. in "respon[se] to being pushed" by the officer, and the there was "conflicting information about what happened" when Mr. McAbee was positioned over Officer A.W. at the bottom or the stairs. *Id.*

After close and careful review of the record evidence, the Court disagrees with Judge Frensley's finding and Mr. McAbee's argument that he did not take any "offensive action" at the U.S. Capitol on January 6, 2021. To the contrary, Mr. McAbee appears to have acted deliberately when he fought against MPD officers who were attempting to protect the U.S. Capitol and when he used physical force to pull an officer into the violent and angry mob. The government's video evidence captures multiple angles of the horrifying scene that unfolded that day. *See generally* Gov't's Video Exs. 1-6b. Hundreds if not thousands of rioters had gathered outside of the U.S. Capitol building around the Lower Western Terrace. *See, e.g.*, Gov't's Video Ex. 3. A handful

28

of law enforcement officers had been pushed back toward the
Capitol building, and they attempted to maintain their position
at the top of the stairs under the archways. *Id.* Rioters were
screaming as they pushed toward the officers, and they wielded
items like hockey sticks, crutches, and American flag poles,
some of which they hurled toward the officers. *Id.* Some rioters
advanced on the officers, engaging in hand-to-hand assaults,
utilizing weapons to beat officers and knock them to the ground.
*Id.* Rioters succeeded in knocking officers to the ground,
allowing them to more easily kick, punch, and hit the officers.
*Id.; see also* Gov't's Video Exs. 1, 2, 4. Watching the video
footage of these events unfold continues to elicit horror and
sadness—this was, without a doubt, a crime that is unparalleled
in our nation's history.

Mr. McAbee was a willing participant, front and center in
these violent, angry, and aggressive assaults on law enforcement
officers who were attempting to protect the U.S. Capitol from
rioters. After one MPD officer had already been knocked down,
beaten, and dragged into the massive mob of rioters, Mr. McAbee
made his way to the center of the fight. *See* Gov't's Video Ex. 1
at 00:00-00:48. The evidence is clear that Mr. McAbee placed his
hands on Officer A.W.'s legs and torso as the officer was lying
on the ground under the archway attempting to fend off the
attacking rioters. *Id.* Mr. McAbee pulled the officer toward the

mob. *See id.* at 00:40-00:54; Gov't's Video Ex. 2 at 00:29-00:39.
In the Court's view, this is an offensive action. In addition,
the evidence shows that Officer C.M pushed Mr. McAbee with his
police baton, and the Court reasonably interprets this action as
the officer attempting to prevent Mr. McAbee from continuing to
physically assault Officer A.W. *See* Gov't's Video Ex. 1 at
00:54-01:00. The evidence next shows that Mr. McAbee stands to
confront Officer C.M. and begins swinging his arms and hitting
the officer. Gov't's Video Ex. 1 at 01:00-01:06; Gov't's Video
Ex. 2 at 00:39-00:50; Gov't's Video Ex. 4 at 00:30-00:58. The
Court disagrees with Judge Frensley that Mr. McAbee was only
acting in self-defense, in view of the larger context of Mr.
McAbee assaulting, offensively and aggressively, Officer A.W. at
that time. Moreover, Mr. McAbee then returned to Officer A.W.,
stood over him, grabbed him by the chest, and pulled him toward
the stairs, causing them to tumble together into the mob. *See*
Gov't's Video Ex. 4 at 00:58-01:04; *see also* Gov't's Video Ex. 3
at 00:42-00:45. This, too, was "offensive action." While the
Court agrees with Mr. McAbee that the video footage showing the
period after Mr. McAbee and Officer A.W. tumbled down the stairs
does not make clear whether Mr. McAbee was pinning the officer
to the ground in an aggressive way or in a way meant to shield
the officer from other rioters, the Court nonetheless finds that
Mr. McAbee had engaged in a number of aggressive, offensive, and

violent actions up until that point, and those actions were not aimed at helping any of the law enforcement officers who were being beaten. Thus, even if Mr. McAbee had a change of heart in these few seconds between pulling the Officer A.W. into the crowd and landing on the ground at the bottom of the stairs, Mr. McAbee is not absolved from his prior alarming conduct that is depicted in the evidence proffered by the government. The same is true of Mr. McAbee's attempts to assist a fellow rioter who was in medical distress and in need of life support after these events transpired. *See* Gov't's Video Ex. 6b.

In short, the Court concludes that the record evidence shows Mr. McAbee did in fact engage in "offensive action" directed toward law enforcement officers at the U.S. Capitol on January 6, 2021; his actions were deliberate and dangerous; and any attempts to render aid to another rioter or the officer whom he had placed in harm's way do not negate the dangerousness he poses to the community in view of the conduct he displayed on that day. Indeed, "[g]rave concerns" are implicated where, as here, "a defendant actively threatened or confronted federal officials or law enforcement" because such conduct demonstrates "disregard for the institutions of government and the rule of law[.]". *Chrestman*, 525 F. Supp. 3d at 27. And as the D.C. Circuit has said, "those [rioters] who actually assaulted police officers and . . . those who aided, conspired with, planned, or

coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." *Munchel*, 991 F.3d at 1284. Mr. McAbee's actions on January 6, 2021, demonstrate a clear contempt for the rule of law and law enforcement and a willingness to engage in violence. These are qualities that bear on the seriousness of the offensive conduct and the ultimate inquiry of whether Mr. McAbee will comply with conditions of release meant to ensure the safety of the community. *See Chrestman*, 525 F. Supp. 3d at 27.

For these reasons, the first 18 U.S.C. § 3142(g) factor weighs heavily in favor of detention on the basis that no condition or combination of conditions will reasonably assure the safety of the community. 18 U.S.C. § 3142(e)(1), (g)(1).

### 2. Weight of the Evidence Against the Defendant

The second factor the Court must consider is the weight of the evidence against Mr. McAbee. 18 U.S.C. § 3142(g)(2).

The Court finds that the weight of the evidence against Mr. McAbee tips in favor of continued detention. Mr. McAbee was indisputably present at the U.S. Capitol on January 6, 2021, and video footage and photographs from the day show Mr. McAbee, in his distinctive outfit—a black shirt with the word "SHERIFF" over a vest, black gloves with metal studs, a red baseball cap, white sunglasses, and a red bandana over his face. *See* Gov't's

Mot., ECF No. 108 at 12; *see also* Gov't's Ex. 4.2, ECF No. 108 at 11. Evidence further places Mr. McAbee amid a group of rioters assaulting law enforcement officers under an archway of the Lower Western Terrace. *See generally* Gov't's Video Ex. 3. Mr. McAbee is captured on video approaching the fight, physically engaging with two MPD officers, and tumbling down a staircase into the large crowd with one of the officers. *See generally* Gov't's Video Exs. 1-4. Furthermore, former co-workers identified Mr. McAbee as the person captured in the video and photographic evidence; law enforcement recovered items shown in the video and photographic evidence from Mr. McAbee's home; and Mr. McAbee's text messages corroborate that he was present at the U.S. Capitol on January 6, 2021, and participated in events depicted in the video and photographic evidence. *See* Gov't's Mot., ECF No. 108 at 10-16.

To be sure, Mr. McAbee will have the opportunity to refute the government's evidence and present additional evidence in his defense at trial, and, as discussed above, Mr. McAbee has already presented alternative interpretations of the events depicted in the video footage and photographs submitted by the government. But for purposes of the Court's decision on detention, the government's evidence in support of the charged offenses is strong. In consideration of the strength of the government's evidence against Mr. McAbee, the Court finds that

33

the second 18 U.S.C. § 3142(g) factor weighs in favor of his
continued pretrial detention, although it "is the least
important" factor. *United States v. Padilla*, No. CR 21-214
(JDB), 2021 WL 1751054, at *7 (D.D.C. May 4, 2021) (quoting
*United States v. Gebro*, 948 F.2d 1118, 1121-22 (9th Cir. 1991)).

### 3. History and Characteristics of the Defendant

Under the third factor, the Court must consider Mr.
McAbee's history and characteristics. 18 U.S.C. § 3142(g)(3).
The Court considers Mr. McAbee's "character, physical and mental
condition, family ties, employment, financial resources, length
of residence in the community, community ties, past conduct,
history relating to drug or alcohol abuse, criminal history, and
record concerning appearance at court proceedings," *id.* §
3142(g)(3)(A); and "whether, at the time of the current offense
or arrest, [Mr. McAbee] was on probation, on parole, or on other
release," *id.* § 3142(g)(3)(B).

Here, there are some factors in Mr. McAbee's favor. He is
twenty-seven years old and has no criminal history. *See* Gov't's
Reply, ECF No. 116 at 6. As Mr. McAbee points out and Judge
Frensley found, there is no "evidence of prior dangerousness or
violence from his past or history." Def.'s Opp'n, ECF No. 113 at
4-5. Mr. McAbee has also received support from friends and
family who have sent in letters on his behalf, and Judge
Frensley concluded that he has "strong ties to the community."

34

*See* Def.'s Opp'n, ECF No. 113 at 5 (citing Hr'g Tr., Def.'s Opp'n Ex. 1, ECF No.  at 12, 13, 18).

However, the Court is troubled by another aspect of Mr. McAbee's history and characteristics, which is that he himself has been employed by law enforcement agencies and was a sheriff's deputy on January 6, 2021, when he participated in the riot at the U.S. Capitol and physically assaulted MPD officers attempting to protect the building and members of Congress. *See* Gov't's Mot., ECF No. 108 at 13. As the government notes, "[t]he defendant's occupation invested him with the responsibility to uphold and enforce the law. It also required an understanding of what constitutes a violation of that law. Yet, neither prevented the defendant from engaging in the assaultive, criminal conduct" addressed here. *See* Gov't's Reply, ECF No. 116 at 7. Mr. McAbee's decisions on January 6, 2021, "show that he is willing to allow his own personal beliefs to override the rule of law, which reflects poorly on his character." *United States v. Klein*, No. CR 21-236 (JDB), 2021 WL 1377128, at *10 (D.D.C. Apr. 12, 2021) (quotation omitted); *see also Sabol*, 534 F. Supp. 3d at 80 ("That [the defendant] acted violently against law enforcement protecting the peaceful transition of power based on a belief that the 2020 Presidential Election was stolen is also very alarming [and] indeed raises concerns about [his] character and the danger [he] may present to the community if he were

35

released."). Worse, he was willing to allow those beliefs to override his sworn duty to uphold the rule of law as a law enforcement officer and even fight against officers with whom one would expect he held a mutual respect or kinship.

Thus, while the Court appreciates that Mr. McAbee has no criminal record or history of violent behavior in his past, Mr. McAbee's employment as a law enforcement officer worries the Court when considering whether he would abide by conditions of release to assure the safety of the community in view of his willingness to abdicate his responsibility to uphold the law in the past. For this reason, the Court finds that this factor weighs slightly in favor of pretrial detention.

### 4. Nature and Seriousness of the Danger Posed by the Defendant's Release

The final factor the Court must consider is the "nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4).

For many of the reasons already addressed above, the Court finds that this factor also weighs against Mr. McAbee and in favor of his continued pretrial detention. "Consideration of this factor encompasses much of the analysis set forth above, but it is broader in scope," requiring an "open-ended assessment of the 'seriousness' of the risk to public safety." *United States v. Cua*, No. CR 21-107 (RDM), 2021 WL 918255, at *5

36

(D.D.C. Mar. 10, 2021) (quoting *United States v. Taylor*, 289 F. Supp. 3d 55, 70 (D.D.C. 2018)). "Because this factor substantially overlaps with the ultimate question whether any conditions of release 'will reasonably assure [the appearance of the person as required] and the safety of any other person and the community,' 18 U.S.C. § 3142(e), it bears heavily on the Court's analysis." *Id.*

As discussed above, the nature and circumstances of Mr. McAbee's offenses evince a clear disregard for the safety of others. *See supra* Section III, Part B.1; *see also Chrestman*, 525 F. Supp. 3d at 28. The government has shown that Mr. McAbee deliberately joined an ongoing attack on MPD officers protecting the U.S. Capitol on January 6, 2021. He used physical force to pull an officer into the larger mob of angry and violent rioters. When another officer tried to stop Mr. McAbee from doing so by hitting and pushing him with a baton, Mr. McAbee stepped up to fight the officer, swinging his arms while wearing metal-studded gloves on his hands. Contrary to the magistrate's finding and Mr. McAbee's argument, the government's evidence shows that Mr. McAbee took intentional and "offensive action" on January 6, 2021 that was violent and aggressive. Altogether, the evidence "suggests that [Mr. McAbe] was not a passive observer, but an active aggressor." *Caldwell*, 2021 WL 2036667, at *10. This weighs strongly against Mr. McAbee's pretrial release.

And although Mr. McAbee points to evidence suggesting that
he later attempted to help a rioter who had been injured during
the chaotic scene that was unfolding around the Lower Western
Terrace, the Court is not persuaded that this action negates the
clear disregard he showed for the safety of others and the lives
of the MPD officers he assaulted. *See United States v. Fairlamb*,
535 F. Supp. 3d 30, 43 (D.D.C. 2021) ("[T]he defendant's
willingness to assault a police officer on January 6—in the full
view of other officers, scores of bystanders, and many cameras—
confirms that, when enraged, he poses a danger to the
community."). It is especially concerning that Mr. McAbee so
willingly engaged in this confrontation with law enforcement
officers when he himself was employed as a sheriff's deputy,
sworn to uphold the law.

The Court is also deeply troubled by the text messages Mr.
McAbee sent in the days after January 6, 2021, which reveal the
pride he felt in his actions and his willingness to engage in
more violent acts in the future. Mr. McAbee proudly displayed a
newspaper article about the horrifying events that transpired
that day, with a headline that read "INSURRECTION." *See* Gov't's
Reply, ECF No. 116 at 5-6 (citing Gov't's Ex. E, ECF No. 125-4
at 1; Gov't's Ex. F, ECF No. 125-5). He told an associate that
he had "shed blood for [his] country," and he "will shed much
more in the days to come." Gov't's Ex. E, ECF No. 125-4 at 3. He

proclaimed "necisque libertas," liberty or death. *Id*. And he exclaimed, "I call for secession!" Gov't's Ex. B, ECF No. 125-1 at 88. The magistrate was perhaps not troubled by these messages because they were written only days after the events at the U.S. Capitol, and the government has proffered no evidence showing Mr. McAbee held similar views any time after January 10, 2021. But the messages reveal that Mr. McAbee was not just caught up in the "frenzy" of the riot on January 6, 2021. Multiple days had passed, Mr. McAbee was far from Washington, D.C., and the nationwide reaction to the events of the day was largely shock and horror; nonetheless, he expressed pride in what he had done that day. Further demonstrating that he planned and intended to engage in violence on January 6, 2021, are text messages he sent to an associate in the days prior. Mr. McAbee's statements both before and after January 6, 2021, demonstrate a willingness to "take matters into his own hands to defend the country against perceived corruption in democratic institutions." *DeGrave* 2021 WL 1940536, at *17. This underscores the danger Mr. McAbee presents to the community if released.

Indeed, "[w]hile the circumstances of January 6, 2021 were unique, and the day has passed, it cannot be said that every Capitol Riot defendant is no longer a danger because those exact circumstances are unlikely to arise again." *Sabol*, 524 F. Supp. 3d at 84. And as this Court stated in *Whitton*, "even if the

exact circumstances of the January 6 attacks are not 'continuing in nature' or 'likely to be repeated in the future,' the violent offenses [the defendant] committed that day are serious enough on their own to militate against pretrial release." *Whitton*, 534 F. Supp. 3d at 43. Mr. McAbee is "distinguishable from other Capitol Riot defendants who displayed a dangerous distain for democracy and the rule of law on January 6, 2021, but who did not engage in violence, *see, e.g.*, *Munchel*, 991 F.3d at 1283-84, or who did not direct their 'forceful conduct' toward inflicting injury, *see United States v. Klein*, No. CR 21-236 (JDB), ECF No. 29 at 24, (D.D.C. Apr. 12, 2021)." *Whitton*, 534 F. Supp. 3d at 47-48.

In consideration of these factors and noting the D.C. Circuit's observation that "[i]t cannot be gainsaid that the violent breach of the [U.S.] Capitol on January 6 was a grave danger to our democracy, and that those who participated could rightly be subject to detention to safeguard the community," *Munchel*, 991 F.3d at 1284-85; the Court is persuaded that Mr. McAbee poses a danger to his community and the broader community of American citizens if he were to be released pending trial, and he "cannot be trusted to abide by any conditions of release that might be imposed instead of pretrial detention." *Chrestman*, 525 F. Supp. 3d at 36.

**IV. Conclusion**

After considering the factors set forth in 18 U.S.C. § 3142(g), the Court finds, by clear and convincing evidence, that no condition or combination of conditions will reasonably assure the safety of any other person and the community were Mr. McAbee to be released pending trial. 18 U.S.C. § 3142(e)(1). Accordingly, the government's motion is **GRANTED**. Mr. McAbee shall be detained pending trial. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed: _____/s/_____
            **Emmet G. Sullivan**
            **United States District Judge**
            **December 21, 2021**