# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 21-cr-35 (EGS)** |
| **v.** | : | |
| | : | |
| **RONALD COLTON MCABEE,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF DETENTION ORDER

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in opposition to defendant Ronald Colton McAbee's Motion for Reconsideration of Detention Order (the "Motion"). The Motion neither presents new evidence nor identifies a clear error by this Court. Indeed, it is nothing more than an attempt to relitigate this Court's detention order and should therefore be denied.

## I.      BACKGROUND

On August 17, 2021, the defendant was arrested in his home state of Tennessee on an arrest warrant issued from the United States District Court for the District of Columbia by Magistrate Judge Robin M. Meriweather. A grand jury in the District of Columbia subsequently returned a superseding indictment (the Third Superseding Indictment) charging the defendant with one count of Inflicting Bodily Injury on Certain Officers or Employees and Aiding and Abetting, in violation of 18 U.S.C. §§ 111(a)(1) and (b) and 2 (Count Nine); one count of Assaulting, Resisting, or Impeding Certain Officers or Employees, in violation of 18 U.S.C. § 111(a)(1) (Count Twelve); one count of Obstruction of Law Enforcement During Civil Disorder, in violation of 18 U.S.C. §

231(a)(3) (Count Fourteen), one count of Knowingly Entering or Remaining in any Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A) (Count Eighteen), one count of Disorderly and Disruptive Conduct in any Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A) (Count Nineteen), one count of  Engaging in Physical Violence any Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A) (Count Twenty), and one count of Violent Entry and Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count Twenty Four).[1]

On August 17, 2021, during the defendant's initial appearance in the Middle District of Tennessee, the government made a motion to detain the defendant without bond pending trial pursuant to 18 U.S.C. §§ 3142(e), (f)(1)(A), and (f)(1)(E).  A detention hearing was held on August 26, 2021, and resumed on September 8, 2021, during which the Magistrate Judge Jeffrey S. Frensley denied the government's detention motion and issued an order releasing the defendant with certain conditions. On September 8, 2021, the government appealed that order to this Court and asked this Court to stay the defendant's release pending a hearing on the appeal. (ECF No. 108).

This Court granted that motion, received briefing from the parties (ECF Nos. 113, 116), and, on September 22, 2021 and October 13, 2021, conducted a thorough detention hearing.  At

---

[1] The previous version of the indictment (the Second Superseding Indictment), returned prior to the defendant's arrest, charged the defendant with the same offenses, but contained an additional violation of 18 U.S.C. § 231(a)(3).  The conduct underlying the two § 231(a)(3) counts in the Second Superseding Indictment – the defendant's obstruction, impeding, or interference with Metropolitan Police Department ("MPD") Officer A.W. (Count Eight) and the defendant's obstruction, impeding, or interference with MPD Officer C.M. (Count Ten) – is now encompassed by Count Fourteen of the Third Superseding Indictment.

that hearing and in its filings, the Government offered 14 exhibits: six videos (the body-worn camera videos of Metropolitan Police Department ("MPD") Officers C.M. (Exhibit 1), D.P. (Exhibit 2), A.W. (Exhibit 4), and S.S. (Exhibits 6a and 6b), and third-party video footage (Exhibit 4)), two still images (Exhibits 5 and 7), and two text message exchanges, including photographs, between the defendant and two other individuals (Associate-1 and Associate-2) (Exhibits B-G.). (ECF Nos. 108, 117, 123, 125, 129).  The Government also provided the transcript of the August 26 and September 8, 2021 detention hearing that was conducted in the Middle District of Tennessee.  (ECF No. 124).

On October 13, 2021, this Court ordered the defendant detained pending trial pursuant to 18 U.S.C. § 3142(e)(1), finding that no conditions or combination of conditions of release can assure the safety of the community were the defendant to be released.  *See* October 13, 2021 Transcript at 3:18-4:1.  On December 12, 2021, this Court issued a lengthy opinion setting forth its findings and reasoning in more detail.  (ECF No. 166).  In that opinion, this Court found that the defendant, along with his codefendants, was "an active participant" in assaults of several MPD officers between approximately 4:27 p.m. and 4:29 p.m. on January 6, 2021.  ECF No. 166 at 8. Specifically, the defendant, who at the time was a sheriff's deputy, "wearing metal-knuckled gloves and carrying a black baton . . .[,] entered the archway [on the lower western terrace of the Capitol building], grabbed Officer A.W. by his left leg and torso as codefendant Clayton Ray Mullins grabbed the officer's right leg, and pulled him further toward the stairs and the large crowd of rioters gathered there."  *Id.* (internal citations omitted).  The defendant "remained positioned over Officer A.W. and screamed at other officers under the archway who were trying to assist . . . officers and rioters who had been knocked to the ground."  *Id.* at 9 (internal citations omitted). When Officer C.M. moved forward towards the defendant and "pushed and hit him with a police

3

baton," the defendant "then stood upright and swung his arms at Officer C.M. while screaming profanities." *Id* (internal citations omitted). The defendant then "turned his attention back to Officer A.W. . . ., stood directly over Officer A.W., bent over, and grabbed him by his torso. He then dragged Officer A.W. out of the archway, and the two tumbled together down the stairs and into the mob  For the next twenty-five seconds, [the defendant] was positioned over Officer A.W. as the officer was lying on his back at the bottom of the stairs." *Id.* (internal citations omitted).

On May 9, 2022, the defendant filed a motion seeking reconsideration of the Court's decision – the Motion. (ECF No. 191).

## II.    ARGUMENT

### A.  Standard of Review

Pursuant to 18 U.S.C. § 3142(f)(2), a court may reconsider pretrial detention determination at any time before trial if the judicial officer finds that "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." *See also United States v. Bikundi*, 73 F. Supp. 3d 51, 54 (D.D.C. 2014). In other words, the statute requires that a movant provide information that is both "new" and "material." *See United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020). And, in the context of a motion for reconsideration of a detention order – as the defendant has styled his motion – "a court will grant [such as motion] only when the movant demonstrates: (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order" (internal citations and quotation marks omitted), or "where a controlling or significant change in the law or facts has occurred since the submission of the issue

4

to the court." *United States v. Gamble*, No. 19 Cr. 348 (CKK), 2020 WL 588323, at *3 (D.D.C. Feb. 6, 2020), *vacated and remanded on other grounds*, 810 F. App'x 7 (D.C. Cir. 2020).

It follows, then, that "'motions for reconsideration,' whatever their procedural basis, cannot be used as 'an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier.'" *Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011) (quoting *SEC v. Bilzerian*, 729 F.Supp.2d 9, 14 (D.D.C.2010)). Indeed, "where litigants have once battled for the court's decision, they should [not] be ... permitted[ ] to battle for it again." *United States v. Hong Vo*, 978 F. Supp. 2d 41, 48 (D.D.C. 2013) (quoting *Arias v. DynCorp*, 856 F. Supp. 2d 46, 52 (D.D.C. 2012) (alterations in original)).

Previously available information—even if "material"—is not grounds to reopen a detention hearing. *See Lee*, 451 F. Supp. 3d at 5. And any "new" information is only "material" if it is "essential to, or capable of significantly affecting, the detention decision." *United States v. Worrell*, 2021 WL 2366934 at *9 (D.D.C. June 9, 2021); *see also Lee*, 451 F. Supp. 3d at 5 (stating that, for purposes of reopening a detention hearing, information has a "material bearing" on detention if it "casts different light on any of [the Bail Reform Act] factors," and citing Black's Law Dictionary (11th ed. 2019), which defines "material" as "[h]aving some logical connection with the consequential facts" or "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential.")).

### B.   The Defendant Has Not Presented Any New, Material Information or Identified Any Clear Error Warranting Pretrial Release.

In his Motion, the defendant claims that the government "misconstrue[d], mischaracterize[d], and demonize[d] every action of Mr. McAbee on January 6, 2021," Motion at

5, and purports to offer "new information" in the form of "additional video evidence," *id.* at 4-5, and a "now more robust record," *id.* at 7. Instead, the defendant discusses the very same exhibits offered during the September 22, 2021 detention hearing, asks the Court to draw the same inferences he urged at that hearing, and asserts that the Court's conclusions otherwise were clearly erroneous.

The defendant first focuses on the four *Chrestman* factors[2] that the Court determined weighed in favor of pretrial detention:

(1) "[W]hether a defendant has been charged with felony or misdemeanor offenses," *id.* at 26.

The defendant concedes, as he must, that he is charged with at least three felonies -- violations of 18 U.S.C. §§ 111(a)(1) and (b), 111(a)(1), and 231(a)(3)[3] – and that one of those felonies is a crime of violence. Motion at 8-9. He has offered no evidence suggesting that this is not the case or that the court was erroneous in so finding. While he attempts to distinguish himself from other defendants charged in this matter by asserting that he is not charged with a violation of 18 U.S.C. § 1512(c), the Court did not base its ruling on any such misunderstanding. *See* ECF No. 166 at 20-21 (["Mr. McAbee] has been charged with assaulting and inflicting bodily injury on a MPD officer who was tasked with protecting the U.S. Capitol, and he has also been charged with engaging in physical violence with a deadly or dangerous weapon on restricted grounds."). The

---

[2] In *United States v. Chrestman,* Chief Judge Howell has set forth a number of considerations to differentiate the severity of the conduct of the hundreds of defendants involved in the January 6, 2021 breach of the United States Capitol. *See United States v. Chrestman*, 525 F. Supp. 3d 14, 24-27 (D.D.C. 2021).

[3] The defendant was also charged with violations of 18 U.S.C. §§ 1752(a)(1), (a)(2), (a)(4), and (b)(1)(A), which are also felonies.

defendant has offered no new evidence undermining the Court's application of this factor and such application was not clearly erroneous.

(2) "[A]ny indication that a defendant engaged in prior planning before arriving at the Capitol," *Chrestman*, 525 F. Supp. 3d at 26

The defendant argues that this Court's consideration of whether he engaged in planning prior to his arrival at the Capitol on January 6, 2021 overlooks the requirement that such planning be aimed at a disruption of the political process.  Motion at 9-10.  *Chrestman* contains no such requirement; it is the defendant who misconstrues this factor.  Rather, it is the planning itself that "suggests that he was not just caught up in the frenzy of the crowd, but instead came to Washington, D.C. with the intention of causing mayhem and disrupting the democratic process, mandated under the U.S. Constitution, of counting and certifying Electoral College votes," *id.* at 26; ECF No. 166 at 22-23, and the "carrying or use during the riot of a dangerous weapon . . . [that] indicates at least some degree of preparation for the attack and an expectation that the need to engage in violence against law enforcement or, indeed, the Legislative branch, might arise," *Chrestman*, 525 F. Supp. at 26.

Nevertheless, the defendant does not dispute that he and Associate-1 anticipated that violence would occur on January 6, 2021, that they discussed bringing weapons and defensive gear to the Capitol, and that the defendant, in fact, acquired metal-knuckled gloves in order to wear them to the Capitol on January 6, 2021 and wore a ballistic vest that day.  *See* ECF No. 166 at 22. That he asserts that he intended to use these items against counter-protestors, as opposed to law enforcement or members of Congress, Motion at 11, does little to undercut the fact that he and Associate-1 were prepared to encounter and use violence.  Nor was the Court unaware of such an argument; the full text message exchange between the defendant and Associate-1 – which the

defendant cites in support of this argument – was available to the defendant for use at the detention hearing (both in Tennessee and in the District of Columbia) and presented to the Court in the Government's filings.  ECF No. 125 Ex. B.  This information and argument are not new and it was not error for the Court to give it little weight in its detention determination, particularly in light of the full set of messages.

(3) "[The] defendant's carrying or use during the riot of a dangerous weapon," *Chrestman*, 525 F. Supp. 3d at 26.

The defendant also does not dispute that he wore metal-knuckled gloves on January 6, 2021 and that he possessed a baton at least briefly that day.  He argues, however, that the Court failed to consider his failure to use either weapon against police officers.  Motion at 13.  To the contrary, the defendant made this argument at the September 22, 2021 hearing.  *See* September 22, 2021 Transcript at 19:2-19:5 ("[H]e leans over and picks up a baton.  And the very next second you see Mr. McAbee in that same video no baton.  You  never see him wield that baton not one time."); *id.* 19:11-9:14 ("[I]f he went to Washington, D.C. on January 6th bent on causing some kind of mayhem why didn't he use those knuckled gloves to hit anybody?  You never see him do that.").  And the Court both heard and understood this argument.  *See* ECF No. 166 at 23-24 ("Mr. McAbee has asked the Court to consider the magistrate's finding that he 'chose not to use' the baton. . . Counsel for Mr. McAbee further argued at the September 22, 2021 hearing that the government has not provided any evidence that Mr. McAbee used either the baton or the metal-knuckled gloves."); *id.*at 24 ("The Court agrees that the government's evidence does not support a finding that Mr. McAbee used any weapon during the riot").  Yet the Court "remain[ed] troubled by Mr. McAbee having armed himself at all" and concluded that "[e]ven if Mr. McAbee did not use the gloves or the baton while assaulting officers, his decision to carry those weapons knowing he

8

would be involved in a violent riot demonstrates his willingness to engage in violence to advance

his political views and, thus, his dangerousness to the community." *Id.* at 24-25.  The arguments

the defendant presents in his motion are not new; nor were they overlooked.

> (4) "[The defendant's words and movements during the riot," including whether he
> "injured, attempted to injure, or threatened to injure others," *Chrestman*, 525 F. Supp.
> 3d at 27.

Finally, the defendant simply disagrees with the Court's determination that he "acted

deliberately when he fought against MPD officers who were attempting to protect the U.S. Capitol

and when he used physical force to pull an officer into the violent and angry mob," ECF No. 166

at 28, and "did in fact engage in 'offensive action' directed toward law enforcement officers at the

U.S. Capitol on January 6, 2021," *id.*at 31.  Motion at 15.  The defendant, however, offers no new

evidence to support his version of events and instead makes assertions about what the video

evidence does or does not show.  All of these arguments were presented at the detention hearing

and the Court gave them significant consideration in its opinion.  *See, e.g.,* September 21, 2021

Transcript at 18:6-18:9 ("If you look at that video, what you will see Judge is this, Mr. McAbee

puts his hand on the thigh of the officer and he reaches over.  When you slow that up you do not

see him grabbing that officer."); *id.* at 20:24-21:2 ("The other video, Judge, where you see Mr.

McAbee is supposedly laying on the officer and supposedly laid on the officer for 25 seconds.

Your Honor, look at that video.  You can tell from the video he could not have been doing that.");

ECF No. 166 at 29-31 (engaging in a thorough analysis of the video exhibits introduced at the

September 22, 2021 detention hearing).  "'New and material information ... consists of something

other than a defendant's own evaluation of his character or the strength of the case against him';

instead, it must consist of 'truly changed circumstances, something unexpected, or a significant

event.'" *United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020) (quoting *United States v.*

*Esposito*, 354 F. Supp. 3d 354, 359 (S.D.N.Y. 2019)).  The defendant has not identified any such information here.

The defendant's remaining arguments regarding the weight of the evidence, the history and characteristics of the defendant, and the nature and seriousness of the risk posed by his release, Motion at 18-24, similarly boil down to an attempt to relitigate the video evidence presented at the September 22, 2021 detention hearing.[4]  The defendant has offered no new information and the Motion does nothing more than re-assert arguments that were already made to this Court, hoping for a different outcome.

In fact, the <u>only</u> new information contained in the Motion is the defendant's offer of employment should he be released pending trial.  Motion at 24.  This information, however, is not material to the Court's detention determination, as the Court's concerns regarding the danger posed by the defendant's release were not grounded in his ability to obtain or maintain employment.

---

[4] Nor are the defendant's attempts to equate himself with co-defendant Lopatic availing.  First, Lopatic's detention hearing was conducted and the Court's order granting his release was issued prior to the defendant's arrest and detention hearing.  *See* April 26, 2021 Minute Order ("Lopatic Release Order").  Thus, Lopatic's conduct, his release status, and the factors that the Court considered significant in making that determination were known to the defendant (and to the Court).  Second, the Court has specifically distinguished Lopatic's circumstances from the defendant's.  *Compare* Lopatic Release Order ("Mr. Lopatic does not appear to have engaged in significant prior planning or coordination with other rioters . . ; he did not use or carry any weapons"), *with* ECF No. 166 at 22 ("The government's evidence shows that Mr. McAbee coordinated his trip to Washington, D.C. with Associate-1; he discussed various weapons he and/or his associate might bring to the U.S. Capitol, including a 't-handle tire puncture,' knives, brass knuckles, and a magazine; and he procured metal-knuckled gloves that he work on January 6, 2021 during the riot.") *and id.* at 23 ("The government's evidence establishes that Mr. McAbee wore metal-knuckled gloves on both hands and that he held a black baton for at least a short time when he entered the ongoing, violence confrontation between rioters and MPD officers under the Lower Western Terrace archway.").  The defendants repeated assertions to the contrary, devoid of new information, do not render the Court's finding erroneous.

Other than this employment opportunity, the defendant has not offered any new information and he certainly has not identified any evidence that would alter the "underlying reasons for this court's prior decisions regarding pretrial detention." *United States v. Bikundi*, 73 F. Supp. 3d 51, 54–55 (D.D.C. 2014) (internal citations and quotation marks omitted).  Reconsideration is therefore not warranted and the Court should deny the Motion in its entirety.

## <u>CONCLUSION</u>

The defendant has not proffered any new facts that would materially alter this Court's decision to detain the defendant, following a thorough hearing in September and October 2021. For the foregoing reasons, the defendant's motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Benet J. Kearney*
Colleen D. Kukowski
DC Bar No. 1012458
Benet J. Kearney
NY Bar No. 4774048
Matthew Moeder
MO Bar No. 64036
Assistant United States Attorneys
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-2646 / (212) 637 2260 / (816) 426-4103
Colleen.Kukowski@usdoj.gov
Benet.Kearney@usdoj.gov
Matthew.Moeder@usdoj.gov

11

## CERTIFICATE OF SERVICE

I certify that a copy of the Government's Opposition to Defendant's Motion for

Reconsideration of Detention Order was served on all counsel of record via the Court's

electronic filing service.


                                     */s/ Benet J. Kearney*
                                     BENET J. KEARNEY
                                     Assistant United States Attorney


Date: May 30, 2022