| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Crim. Action No. 21-35-7 (EGS) |
| RONALD COLTON MCABEE, | |
| Defendant. | |

## MEMORANDUM OPINION

Mr. Ronald Colton McAbee ("Mr. McAbee" or "Defendant") has been charged in a federal indictment with seven serious offenses arising from his participation in the events at the U.S. Capitol on January 6, 2021. *See* Mem. Op., ECF No. 166; Redacted Third Superseding Indictment, ECF No. 154. Shortly after his arrest in his home state of Tennessee, Magistrate Judge Jeffrey S. Frensley issued an order for Mr. McAbee's release to home detention with certain conditions. *See* Mem. Op., ECF No. 166 at 12.[1] The Government filed an emergency motion to review the Magistrate Judge's Release Order and stay that decision pending resolution of the appeal. *See id.* at 13. The Court granted the stay and, following extensive briefing and a motion hearing, granted the Government's motion to detain Mr. McAbee pending trial. *See id.* at 13, 41.

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

Now pending before the Court is Mr. McAbee's Motion for Reconsideration of the Detention Order. *See* Def.'s Mot. Recons. Detention Order ("Def.'s Mot."), ECF No. 191. Upon careful consideration of the motion, opposition, and reply thereto, the applicable law, and the entire record herein, Mr. McAbee's motion is **DENIED**.

## I. Background

The Third Superseding Indictment charges Mr. McAbee with the following offenses: (1) one count of Inflicting Bodily Injury on Certain Officers or Employees and Aiding and Abetting, in violation of 18 U.S.C. §§ 111(a)(1) and (b) and 2; (2) one count of Assaulting, Resisting, or Impeding Certain Officers or Employees, in violation of 18 U.S.C. § 111(a)(1); (3) one count of Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); (4) one count of Entering or Remaining in any Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A); (5) one count of Disorderly and Disruptive Conduct in any Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A); (6) one count of Engaging in Physical Violence in any Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A); and (7) one count of Act of Physical Violence in the

Capitol Grounds or Buildings, in violation of 5104(e)(2)(F). *See* Redacted Third Superseding Indictment, ECF No. 154 at 5-12.

The Court sets forth below a brief summary of the factual evidence proffered by the Parties.[2] The Court previously discussed many of the following facts in its December 21, 2021 Memorandum Opinion granting the Government's motion for review of the Release Order. *See* Mem. Op., ECF No. 166 at 3-11.

**A. Factual**

Mr. McAbee is a 28-year-old who lived in Tennessee before his detention in this case. *See id.* at 3. He previously served in law enforcement, having worked as a sheriff's deputy at the Cherokee County, Georgia Sheriff's Office until November 2020 and then the Williamson County, Tennessee Sheriff's Office until March 2021. *Id.*

In December 2020, Mr. McAbee started to exchange text messages with another person (Associate-1). *Id.* The pair discussed plans to travel to Washington, D.C. on January 6, 2021, the date on which Congress was scheduled to convene and certify the Electoral College vote count for the 2020 Presidential Election. *Id.* They coordinated travel logistics and discussed what items they would bring with them to Washington,

---

[2] At a detention hearing, both parties may present evidence by way of a proffer. *See* 18 U.S.C. § 3142(f); *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

D.C. *Id.* at 4. Among the items discussed were a firearm magazine, a knife, brass knuckles, and a t-handle tire puncture. *Id.* at 4-5. At Mr. McAbee's request, Associate-1 purchased for him an item called "Steel Outdoor Reinforced Brass Knuckle Motorcycle Motorbike Powersports Racing Textile Safety Gloves" through Amazon. *Id.* at 5.

At around the same time, in December 2020, Mr. McAbee underwent a medical examination for a shoulder injury he sustained in a car accident. *Id.* at 4 & n.4. Because of that examination, he was excused from work at the Williamson County Sheriff's Office for the period from December 30, 2020 to January 14, 2021, which included the day he participated in the riot at the U.S. Capitol. *Id.* at 4 n.4. On January 14, 2021, he was cleared to return to work. *Id.*

Meanwhile, Mr. McAbee and Associate-1 prepared themselves for January 6. Associate-1 told Mr. McAbee that he would have the previously-discussed metal-knuckled gloves and extra knives for him. *See id.* at 5-6. They also talked about the possibility of violence on January 6. *See id.* at 6. For instance, Mr. McAbee stated that he did not want certain people to travel with them because he did not think they "should be subject to violence,"

and violence "w[ould] be there." *Id.* (internal quotation marks
omitted).

The Government's evidence establishes that on January 6,
2021, Mr. McAbee was at the U.S. Capitol. *Id.* He was wearing
black gloves with hard, metal knuckles and a black tactical vest
with one patch that read "SHERIFF" and another patch with
insignia associated with the "Three Percenters," which is "a
loosely organized collection of individuals and militia group
members." *Id.* at 6 & n.5. Video and photographic evidence also
show him wearing a red "Make America Great Again" baseball hat,
a red face scarf, white sunglasses, and a black shirt with white
lettering that read "DIFFERENT GENERATION." *Id.* at 7.

More than two hours after rioters forced entry into the
U.S. Capitol, Mr. McAbee was part of "a mob of hundreds of
rioters" close to the archway and stairs at the U.S. Capitol
building's Lower Western Terrace. *Id.* Video footage from
approximately 4:27 p.m. shows rioters, including Mr. McAbee,
near the archway leading to the Lower Western Terrace. *Id.* at 7-
8. These rioters were "engaged in brutal assaults on at least
three MPD Officers—Officers A.W., B.M., and C.M.," during which
rioters threw objects at the officers, struck them with weapons,

knocked them to the ground, and dragged them down the stairs.
*Id.* at 8 (alterations and internal quotation marks omitted).

Mr. McAbee was present at this assault. *Id.* Throughout, he
was wearing his metal-knuckled gloves, and he briefly carried a
black police baton. *See id.* Video footage shows that after other
rioters (including two of Mr. McAbee's co-defendants) knocked
Officer A.W. to the ground and took his police baton, Mr. McAbee
grabbed the Officer by his left leg and torso. *Id.* Another co-
defendant grabbed the Officer's right leg, and together they
dragged the Officer toward the stairs and the mob. *Id.* Mr.
McAbee stood over Officer A.W., yelling at the other officers as
they tried to help the officers and rioters who had been knocked
to the ground. *Id.* at 9. When Officer C.M. pushed and hit him
with a police baton, Mr. McAbee stood up straight, swung his
arms at the Officer, and screamed profanities. *Id.* A co-
defendant then stepped in and assaulted Officer C.M. *See id.*

Officer A.W. remained on the ground. *Id.* Mr. McAbee stood
over him and then grabbed him by his torso. *Id.* Mr. McAbee
dragged the Officer out of the archway, causing the two of them
to tumble together down the stairs and into the mob. *Id.* Mr.
McAbee remained on top of Officer A.W., who was lying on his
back, for the next twenty-five seconds. *Id.* Officer A.W. endured
further violence from the mob at the bottom of the stairs: he
"was kicked, struck with poles, and stomped on by several

6

individuals, his helmet was ripped off, he was stripped of his baton and his MPD-issued cell phone, and he was maced while his helmet was off." *Id.* at 10. The Officer suffered a laceration on his head, which was later treated with two staples. *Id.*

The riot continued for hours as more rioters entered the U.S. Capitol and physically engaged with law enforcement officers. *Id.* at 7. As for Mr. McAbee, the record evidence shows that he and other rioters attempted to provide medical assistance to a rioter in medical distress. *Id.* at 10. While he was helping that rioter, Mr. McAbee was pushed into the side of the archway by the mob, which aggravated his shoulder injury. *See id.* He then tried to get out of the riot and through the police line by pointing to the "SHERIFF" on his vest. *See id.*

After January 6, 2021, Mr. McAbee communicated with Associate-1 and another individual ("Associate-2") about what transpired. *See id.* at 11. He sent Associate-1 and Associate-2 a picture of himself smiling and holding a newspaper with the headline "INSURRECTION." *Id.* He messaged Associate-1 that he "call[s] for secession." *Id.* (internal quotation marks omitted). Mr. McAbee also sent Associate-2 photographs of a bloodied baseball hat and a head injury, as well as a text message that read: "I've shed blood for my country. By the hands of the swamp. I will shed more in the days to come. But I will not

forget the Oath I swore years ago to protect the America I once knew." *Id.*

Law enforcement officers later identified Mr. McAbee as a participant in the January 6, 2021 insurrection at the U.S. Capitol. *Id.*

### B. Procedural History

On August 17, 2021, Mr. McAbee was arrested in his home state of Tennessee pursuant to an arrest warrant issued from the U.S. District Court for the District of Columbia by Magistrate Judge Robin M. Meriweather. *See* Arrest Warrant Returned Executed, ECF No. 99. After briefing and a detention hearing, Magistrate Judge Frensley of the U.S. District Court for the Eastern District of Tennessee ordered Mr. McAbee released to home detention, which restricted him to his residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office. *See* Release Order, ECF No. 116-1 at 2. The Release Order also required that Mr. McAbee: (1) not travel to the District except for case-related obligations; (2) not travel outside of Tennessee without approval from the pretrial services office; (3) not contact anyone who may be a victim or witness in this

case; (4) not possess a firearm; and (5) refrain from social media or websites regarding insurrection activity. *Id.*

The Government orally moved for a stay of Mr. McAbee's release pending appeal of the Release Order, which Magistrate Judge Frensley granted. *See* Mem. Op., ECF No. 166 at 13. The Government filed an emergency motion with this Court to review and stay the Release Order pending review. *Id.* After further briefing and a motion hearing, the Court granted the Government's motion and ordered that Mr. McAbee be detained pending trial. *Id.* at 41. The Court concluded "by clear and convincing evidence, that no condition or combination of conditions will reasonably assure the safety of any other person and the community were Mr. McAbee to be released pending trial." *Id.*

On May 9, 2022, Mr. McAbee moved for reconsideration of the Court's Detention Order. *See generally* Def.'s Mot., ECF No. 191. The Government filed a response in opposition, *see generally* Gov't's Opp'n Def.'s Mot. Recons. Detention Order ("Gov't's Opp'n"), ECF No. 194; and Mr. McAbee filed a reply, *see* Def.'s Reply Opp'n Mot. Recons. Detention Order ("Def.'s Reply"), ECF No. 195. The motion is ripe and ready for the Court's consideration.

## II. Legal Standard

The Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, provides that a hearing shall be held to determine whether a defendant should be detained pretrial upon a motion by the Government if the defendant is charged with an offense falling in one of five enumerated categories. 18 U.S.C. § 3142(f)(1)(A)-(E).[3] If a detention hearing is held pursuant to Section 3142(f), a judicial officer may detain a defendant pending trial if the judicial officer determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(e). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir. 2021) (quoting *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019)).

Certain conditions and charged offenses trigger a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any person and

---

[3] As relevant here, a detention hearing shall be held pursuant to Section 3142(f)(1)(A) if a defendant is charged with a "crime of violence," or pursuant to Section 3142(f)(1)(E) if a defendant is charged with any felony that is not otherwise a crime of violence that involves the possession or use of any dangerous weapon. 18 U.S.C. § 3142(f).

the community. 18 U.S.C. § 3142(e)(2)-(3).[4] Where there is no rebuttable presumption of detention, the Court considers the following factors to determine whether detention is required to ensure the appearance of the person and the safety of any other person and the community:

> 1. The nature and circumstances of the offense charged, including whether the offense is a crime of violence;
> 2. The weight of the evidence;
> 3. The history and characteristics of the person, including
>> A. The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> B. Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release; and
> 4. The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

---

[4] Offenses triggering a rebuttable presumption under Subsection (e)(3) include the following: "(A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act . . . the Controlled Substances Import and Export Act . . . , or chapter 705 of title 46; (B) an offense under section 924(c), 956(a), or 2332b of this title; (C) an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed; (D) an offense under chapter 77 of this title for which a maximum term of imprisonment of 20 years or more is prescribed; or (E) an offense involving a minor victim under section 1201, 1591, 2241, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425 of this title." 18 U.S.C. § 3142(e)(3)(A)-(E).

18 U.S.C. § 3142(g); *see also Munchel*, 991 F.3d at 1279-80.
Where, as here, the Government argues that the basis for
pretrial detention is the defendant's danger to the community,
the Government is required to demonstrate the appropriateness of
detention pursuant to Subsection (e), in consideration of the
Subsection (g) factors, by clear and convincing evidence. 18
U.S.C. § 3142(f).

Pursuant to the Bail Reform Act, the Court may reconsider
its pretrial detention decision if it "finds that information
exists that was not known to the movant at the time of the
hearing and that has a material bearing on the issue whether
there are conditions of release that will reasonably assure the
appearance of such person as required and the safety of any
other person and the community." 18 U.S.C. § 3142(f)(2)(B); *see
also United States v. Bikundi*, 73 F. Supp. 3d 51, 54 (D.D.C.
2014). "New and material information . . . must consist of truly
changed circumstances, something unexpected, or a significant
event," *United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020)
(quoting *United States v. Esposito*, 354 F. Supp. 3d 354, 359
(S.D.N.Y. 2019) (internal quotation marks omitted); and "must
relate in some significant or essential way to the decision
whether to detain," *United States v. Worrell*, No. 1:21-CR-00292-
RCL, 2021 WL 2366934, at *9 (D.D.C. June 9, 2021), *appeal*

*dismissed*, No. 21-3040, 2021 WL 4765445 (D.C. Cir. Sept. 15, 2021) (citation omitted).

## III. Analysis

### A. The Nature and Circumstances of the Offense Charged

In its December 2021 Memorandum Opinion, the Court first considered "the nature and circumstances of the offense charged, including whether the offense is a crime of violence." 18 U.S.C. § 3142(g)(1). The Court reviewed "the specific offenses and underlying conduct with which Mr. McAbee is charged," Mem. Op., ECF No. 166 at 19 (citing *United States v. Chrestman*, 525 F. Supp. 3d 14, 25-26 (D.D.C. 2021)); in order to "'adequately demonstrate that it considered whether [Mr. McAbee] pose[s] an articulable threat to the community in view of [his] conduct on January 6, and the particular circumstances of January 6,'" *id.* (quoting *Munchel*, 991 F.3d at 1283).

To make this determination and "contextualize the nature and circumstances of offenses committed at the U.S. Capitol on January 6, 2021," *Chrestman*, 525 F. Supp. 3d at 27; the Court considered the record using the six-factor framework set forth in *Chrestman*:

> (1) whether the defendant has been charged with felony or misdemeanor offenses; (2) the extent of the defendant's prior planning; (3) whether the defendant used or carried a dangerous weapon; (4) evidence of coordination with other protestors before, during, or after the riot; (5) whether the defendant assumed a

> formal or de facto leadership role in the
> events of January 6, 2021, for example "by
> encouraging other rioters' misconduct" "to
> confront law enforcement"; and (6) the
> defendant's "words and movements during the
> riot"—*e.g.*, whether the defendant "remained
> only on the grounds surrounding the Capitol"
> or stormed into the Capitol interior, or
> whether the defendant "injured, attempted to
> injure, or threatened to injure others."

Mem. Op., ECF No. 166 at 19-20 (quoting *Chrestman*, 525 F. Supp. 3d at 26-27).

Mr. McAbee objects to the Court's conclusion that at least four of the *Chrestman* factors support the detention order. *See* Def.'s Mot., ECF No. 191 at 8-17. The Court considers each of Mr. McAbee's arguments in turn.

### 1. Mr. McAbee is Charged with At Least One Felony

Mr. McAbee concedes, as he must, that he has been charged with at least one felony. Def.'s Mot., ECF No. 191 at 8-9. Indeed, he faces several serious felony charges at this time. *See* Redacted Third Superseding Indictment, ECF No. 154.

Mr. McAbee also concedes that he has been charged with at least one "crime of violence." Def.'s Mot., ECF No. 191 at 9. The Court determines the same, having concluded in its December 2021 Memorandum Opinion that "assaulting and inflicting bodily injury on a MPD officer who was tasked with protecting the U.S. Capitol" and "engaging in physical violence with a deadly or dangerous weapon on restricted grounds" are both crimes of

violence. Mem. Op., ECF No. 166 at 21 (citing Redacted Third
Superseding Indictment, ECF No. 154 at 5, 9).

Although the above clearly meets the standard set out in
the Bail Reform Act, *see* 18 U.S.C. § 3142(g)(1) ("The judicial
officer shall . . . take into account . . . the nature and
circumstances of the offense charged, including whether the
offense is a crime of violence."); Mr. McAbee contends that the
Court overstepped by "mak[ing] repeated references to alleged
political motivations behind his actions on January 6," Def.'s
Mot., ECF No. 191 at 9. Not so. The Court reviewed the
Government's proffer, considering evidence that "Mr. McAbee
observ[ed] and then join[ed] his codefendants and other rioters
in violent assaults against MPD officers positioned at the
entrance of the archway on the Lower Western Terrace of the U.S.
Capitol on January 6, 2021" and that he "forcibly dragg[ed] a
MPD officer into a violent mob of rioters who ultimately
punched, kicked, and hit him, causing a head laceration and
other injuries." Mem. Op., ECF No. 166 at 21. The Court made no
comment on any possible political motivation—and rightly so,
because neither Section 3142(g)(1) nor the first *Chrestman*
factor direct the Court to make that consideration.

Mr. McAbee has presented no new and material information as
to the first *Chrestman* factor. Rather, his Motion for
Reconsideration underscores the "gravity" of his offenses, and

so this factor therefore "'weighs heavily in favor' of pretrial detention." *Id.* (quoting *United States v. Brown*, CR No. 21-mj-565 (ZMF)(RC), 2021 WL 4033079, at *4 (D.D.C. Sept. 3, 2021) (quoting *United States v. Caldwell*, CR No. 21-181 (CKK), 2021 WL 2036667, at *7 (D.D.C. May 21, 2021)), *aff'd*, No. 21-3063, 2021 WL 5537705 (D.C. Cir. Nov. 17, 2021)).

### 2. Mr. McAbee Engaged in Planning Prior to January 6

Mr. McAbee next argues that there was no factual basis to support a finding that the second *Chrestman* factor weighs in favor of pretrial detention. Again, he presents no argument that there is new and material information bearing on this factor. *See generally* Def.'s Mot., ECF No. 191 at 9-13. Instead, he contends that: (1) any acts of prior planning are not linked "to a motive or intent to interfere with the Congressional action scheduled for January 6"; and (2) the facts regarding Mr. McAbee's offenses are distinguishable from those regarding Mr. Chrestman's offenses. *Id.*[5]

In *Chrestman*, Chief Judge Howell explained:

> [A]ny indication that a defendant engaged in prior planning before arriving at the Capitol, for example, by obtaining weapons or tactical gear, suggests that he was not just caught up in the frenzy of the crowd, but instead came to Washington, D.C. with the intention of

---

[5] Mr. McAbee makes additional arguments that confuse the second and third *Chrestman* factors. *See* Def.'s Mot., ECF No. 191 at 9-13. The Court more appropriately considers those other arguments in its discussion below of the third factor.

> causing mayhem and disrupting the democratic
> process, mandated under the U.S. Constitution,
> of counting and certifying Electoral College
> votes.

*Chrestman*, 525 F. Supp. 3d at 26 (citing U.S. Const. art. II, §

1, cl. 3.). In other words, the Court should consider

information that Mr. McAbee obtained weapons or tactical gear or

otherwise engaged in prior planning. *See id.* That information

supports an inference of an "intention of causing mayhem and

disrupting the democratic process." *Id.*

Mr. McAbee concedes that he obtained dangerous weapons

before arriving at the U.S. Capitol on January 6. *See* Def.'s

Mot., ECF No. 191 at 10-11 (discussing metal-knuckled gloves[6] and

"other items"). Still, he argues that this factor cannot weigh

in favor of pretrial detention because he "is not charged with

having come to Washington DC to disrupt the political process"

and "[t]here is no evidence in this case that Mr. McAbee had any

intention to do so." *Id.* at 10. The first point is not relevant

to the second *Chrestman* factor, which asks whether the defendant

engaged in prior planning—not whether the defendant has been

indicted on a particular charge. *See Chrestman*, 525 F. Supp. 3d

---

[6] Mr. McAbee quibbles with this characterization of his gloves,
*see* Def.'s Mot., ECF No. 191 at 16; but the gloves are called
"Steel Outdoor Reinforced *Brass Knuckle* Motorcycle Motorbike
Powersports Racing Textile Safety Gloves" on Amazon, which is
where the gloves were purchased, Mem. Op., ECF No. 166 at 5
(emphasis added).

at 26. Indeed, and to the second point, Mr. McAbee's Motion for Reconsideration is rife with information that he engaged in prior planning before arriving at the U.S. Capitol. He concedes that he obtained metal-knuckled gloves, a ballistic vest, and "other items" that are dangerous. *See* Def.'s Mot., ECF No. 191 at 10-11. He also concedes that he coordinated and communicated the procurement of these dangerous weapons with Associate-1 before January 6. *See id.*

*Chrestman* makes clear that this information is sufficient to support an inference that he intended to cause mayhem and disrupt the democratic process, *see Chrestman*, 525 F. Supp. 3d at 26; but Mr. McAbee contends that this inference is inappropriate as applied to him, *see* Def.'s Mot., ECF No. 191 at 10-13. His argument fails. Courts have repeatedly held that such an inference is reasonable. *See, e.g.*, *Chrestman*, 525 F. Supp. 3d at 26; *United States v. Sabol*, 534 F. Supp. 3d 58, 73 (D.D.C. 2021) (rejecting defendant's "argument that he did not plan to commit violence" when he "brought tactical gear, including a helmet, steel-toe boots, zip ties, a radio and an ear piece" to the rally); *United States v. DeGrave*, 539 F. Supp. 3d 184, 202 (D.D.C. 2021) (finding that the defendant's decision to wear "bullet proof clothing," as he described it when planning for January 6, 2021, "made clear that he was dressed in anticipation of confronting and engaging in violence"). Moreover, Mr. McAbee

himself proffers evidence that he intended to cause some measure of mayhem on January 6. *See* Def.'s Mot., ECF No. 191 at 11 (explaining that he procured weapons and planned with Associate 1 how to meet counter-protester attacks with violence); *see also* Gov't's Opp'n, ECF No. 194 at 7 ("That he asserts that he intended to use these items against counter-protestors, as opposed to law enforcement or members of Congress, does little to undercut the fact that he and Associate-1 were prepared to encounter and use violence."). As with other defendants, the fact that there might not be "a single line of communication" in his text messages with Associate-1 about "an intention to interfere with the planned Congressional" action does not change the inference. Def.'s Mot., ECF No. 191 at 11.[7]

Mr. McAbee's arguments about Mr. Chrestman and other defendants facing charges from their conduct on January 6 are also unavailing. He argues that other defendants brought other items with them to the U.S. Capitol, *see* Def.'s Mot., ECF No. 191 at 10; but the inquiry at the second *Chrestman* factor is only whether the defendant *obtained* dangerous weapons or tactical gear, *see Chrestman*, 525 F. Supp. 3d at 26. Mr. McAbee does not dispute that he obtained such items. *See generally*

---

[7] Moreover, Mr. McAbee's text messages with Associate-1 and Associate-2 after January 6 call this argument into question. *See* Mem. Op., ECF No. 166 at 11.

Def.'s Mot., ECF No. 191 at 9-13. He also argues that he "was not a member of any national organization," that "he came to Washington D.C. with only one other person to attend a political protest rally," and that "[h]is decision was not in response to any invitation from a national organization announced for the purpose of interfering with Congress." *Id.* at 12. Although a response to an invitation from a national organization planning to interfere with the democratic process is evidence of prior planning, so too is the procurement of dangerous weapons. *See Chrestman*, 525 F. Supp. 3d at 26. In any event, whether the defendant is a member of an organization such as the Proud Boys goes to the fourth *Chrestman* factor, *see id.*; which the Court held weighs against pretrial detention here, *see* Mem. Op., ECF No. 161 at 25-26.

Accordingly, the Court confirms its determination that the second *Chrestman* factor weighs in favor of pretrial detention.

### 3. Mr. McAbee Carried a Dangerous Weapon

With respect to the third *Chrestman* factor, Mr. McAbee again fails to present new and material information and instead rehashes the same arguments already considered by the Court. *See* Def.'s Mot., ECF No. 191 at 11-15; Mem. Op., ECF No. 166 at 23-25. He concedes that he carried metal-knuckled gloves and (albeit briefly) a black police baton. *See* Def.'s Mot., ECF No. 191 at 13-15. He argues that because "he had multiple

opportunities to employ both the gloves and the baton against the law enforcement officers . . . but never did," *id.* at 13; the third factor ought to weigh against detention.

In *Chrestman*, Chief Judge Howell explained that evidence of prior planning, such as "a defendant's carrying *or use* during the riot . . . indicates at least some degree of preparation for the attack and an expectation that the need to engage in violence against law enforcement or, indeed, the Legislative branch, might arise." *Chrestman*, 525 F. Supp. 3d at 26 (emphasis added). Put differently, carrying a dangerous weapon alone supports an inference that the defendant prepared for the attack. *See id.* In considering this factor, courts have made clear that "wielding [a dangerous weapon] would be serious by itself." *Brown*, 2021 WL 4033079, at *5; *see also United States v. Fairlamb*, 535 F. Supp. 3d 30, 41 (D.D.C. 2021). That Mr. McAbee may never have used the metal-knuckled gloves or baton does not minimize his carrying those weapons during the insurrection.

Mr. McAbee also argues that his choice during the riot to not use any of the weapons he carried cuts against any conclusion that he "deliberately joined in an ongoing attack on law enforcement officers[] and [that] his actions were that of an aggressor." Def.'s Mot., ECF No. 191 at 14. The Government's proffer contradicts this argument. Text message communications

between Mr. McAbee and Associate-1 and video evidence establish that Mr. McAbee was prepared to engage in violence at the U.S. Capitol. *See* Mem. Op., ECF No. 166 at 22 (messages discussed weapons Mr. McAbee might bring on January 6, including a t-handle tire puncture, knives, brass knuckles, a magazine, and metal-knuckled gloves); *id.* at 23 (describing that Mr. McAbee wore the metal-knuckled gloves when he entered the violence between the rioters and MPD officers); Def.'s Mot., ECF No. 191 at 11. Video evidence further establishes that Mr. McAbee chose to join in on the violent attack at the U.S. Capitol: "while [Mr. McAbee] had a clear view of his co-defendants and others assaulting uniformed police officers at the entrance to an archway on the Lower Western Terrace of the Capitol building ('Archway'), [he] moved towards the Archway and joined the attack." Mem. Op., ECF No. 166 at 27 (quoting the Government's reply brief). The record evidence demonstrates that his preparation for and his role in the attack were deliberate.

Consequently, the Court again finds that the third *Chrestman* factor weighs in favor of pretrial detention.

### 4. Mr. McAbee's Words and Movements Strongly Support Detention

The sixth *Chrestman* factor examines the "defendant's words and movements during the riot[, which] reflect the egregiousness of his conduct." *Chrestman*, 525 F. Supp. 3d at 27. A finding of

egregiousness is warranted for "defendant[s] who breached the interior of the Capitol building" as well as for those "who injured, attempted to injure, or threatened to injure others, or who damaged or attempted to damage federal property." *Id.* Significant here, "[g]rave concerns are implicated if a defendant actively threatened or confronted federal officials or law enforcement." *Id.*

Mr. McAbee argues that the Court erred in determining that the sixth *Chrestman* factor weighs against him. *See* Def.'s Mot., ECF No. 191 at 15-17. In his briefing, he lists 15[8] additional facts, which he claims are "incontrovertibly true" and "simply ignored" in the December 2021 Memorandum Opinion. *Id.* Only the final six points are relevant to the sixth *Chrestman* factor. Moreover, the Court need not consider any of these points at greater length because: (1) they do not present new and material information; and (2) they merely rehash arguments presented before the Court issued its 2021 detention order.

In the December 2021 Memorandum Opinion, the Court noted that the parties had submitted "differing descriptions of Mr. McAbee's conduct on January 6, 2021." Mem. Op., ECF No. 166 at 26. The Court considered Mr. McAbee's argument that "he 'did not engage in any actual assault.'" *Id.* at 27 (quoting Mr. McAbee's

---

[8] The list in Mr. McAbee's Motion for Reconsideration omits the number 14. *See* Def.'s Mot., ECF No. 191 at 15-17.

opposition briefing); *see* Def.'s Mot., ECF No. 191 at 16–17. The
Court reviewed the record to determine whether Mr. McAbee "took
offensive conduct" and whether he was "in the area during the
assaults on the MPD officers to provide aid and assistance to
individuals he saw who were in peril." Mem. Op., ECF No. 166 at
28 (citation and internal quotation marks omitted) (considering
evidence also before Magistrate Judge Frensley). After reviewing
the "multiple angles" of what transpired at the Lower Western
Terrace, *id.* at 28; the Court made the following findings: (1)
Mr. McAbee moved to the center of the fight "[a]fter one MPD
officer had already been knocked down, beaten, and dragged into
the massive mob of rioters"; (2) "Mr. McAbee placed his hands on
Officer A.W.'s legs and torso as the officer was lying on the
ground"; (3) "Officer C.M pushed Mr. McAbee with his police
baton" in an "attempt[] to prevent Mr. McAbee from continuing to
physically assault Officer A.W."; (4) "Mr. McAbee st[ood] to
confront Officer C.M.," "swinging his arms and hitting the
officer"; and (5) Mr. McAbee "stood over [Officer A.W.], grabbed
him by the chest, and pulled him toward the stairs, causing them
to tumble together into the mob." *Id.* at 29-30. The Court
declined to make factual findings as to "the period after Mr.
McAbee and Officer A.W. tumbled down the stairs" because the
video evidence did "not make clear whether Mr. McAbee was
pinning the officer to the ground in an aggressive way or in a

way meant to shield the officer from other rioters." *Id.* at 30.
In his Motion for Reconsideration, Mr. McAbee merely offers
another explanation of events—one that the Court considered and
largely rejected in its earlier detention order. *Compare* Def.'s
Mot., ECF No. 191 at 15-17, *with* Mem. Op., ECF No. 166 at 26-32.
Moreover, and as the Court explained in December 2021, "even if
Mr. McAbee had a change of heart" at some point, he still
"engaged in a number of aggressive, offensive, and violent
actions," none of which were "aimed at helping any of the law
enforcement officers who were being beaten." *Id.* at 30-31. The
video evidence shows that at several points, Mr. McAbee engaged
in offensive action toward law enforcement officials. His Motion
for Reconsideration restates "facts" that have already been
controverted, and therefore the Court determines again that the
sixth *Chrestman* factor weighs in favor of pretrial detention.

Accordingly, and after considering the *Chrestman* factors to
aid in its consideration, the Court holds again that the nature
and circumstances of Mr. McAbee's specific offenses and
underlying conduct strongly favor detention.

### B. The Weight of the Evidence

Mr. McAbee next disputes that the weight of the evidence
against him favors detention. *See* Def.'s Mot., ECF No. 191 at
18-20. He does not offer new and material information to support
his argument. Rather, he argues that the Court's reasoning on

this point "is tantamount to a pre-trial determination of Mr. McAbee's guilt," which "is expressly prohibited under the Bail Reform Act." *Id.* at 18 (citing *United States v. Alston*, 420 F.2d 176, 179-80 (D.C. Cir. 1969)). He further explains that "[t]his case involves real disputes over what events are depicted in the video" and that he "intends to testify" to offer his "alternative interpretation of all the events on the videos." *Id.*

Contrary to Mr. McAbee's suggestions, the Court made no determination of his guilt in considering the weight of the evidence. The Court instead reviewed the "indisputabl[e]" evidence and found the following all weighed against Mr. McAbee: (1) video footage and photographs show that he was present at the U.S. Capitol on January 6; (2) former co-workers have identified Mr. McAbee as the person captured in that evidence; (3) Mr. McAbee's text messages corroborate that he planned to and actually participated in the insurrection; (4) video footage shows that he wore a ballistic vest and metal-knuckled gloves; (5) video footage shows that Mr. McAbee entered the riot in the Lower Western Terrace; (6) video footage shows he physically engaged with two MPD officers; and (7) law enforcement later recovered items from his home. *See id.* at 32-33. These findings do not exclude the possibility of a meritorious defense. Indeed, recognizing that Mr. McAbee has an alternative explanation of

the video footage, the Court explained that he "will have the opportunity to refute the government's evidence and present additional evidence in his defense at trial." *Id.* at 33. In other words, although the weight of the evidence favors pretrial detention, the Court acknowledged that such a finding is distinguishable from a prediction or conclusion that Mr. McAbee is guilty of the charged offenses.

The Court's reasoning aligns with that of other district court decisions considering the pretrial detention of January 6 defendants. *See, e.g.*, *United States v. Gieswein*, No. CR 21-24 (EGS), 2021 WL 3168148, at *12 (D.D.C. July 27, 2021), *aff'd*, No. 21-3052, 2021 WL 5263635 (D.C. Cir. Oct. 19, 2021) (considering videos and photographs); *Brown*, 2021 WL 4033079, at *6 (videos and photographs); *Fairlamb*, 535 F. Supp. 3d at 41 (videos).

Mr. McAbee also suggests that the weight of the evidence is relevant only in cases where the Government seeks detention based on flight risk. *See* Def.'s Mot., ECF No. 191 at 19 & n.2. Binding precedent from the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") makes clear that courts must consider the weight of the evidence in all cases, including those where the Government seeks detention based only on dangerousness. *See Munchel*, 991 F.3d at 1279.

Accordingly, Section 3142(g)(2) weighs slightly[9] in favor of pretrial detention.

### C. The History and Characteristics of Mr. McAbee

Mr. McAbee also disputes the application of the third Section 3142(g) factor. In its December 2021 Memorandum Opinion, the Court found that several factors weighed in Mr. McAbee's favor—namely, his age, lack of criminal history, lack of prior dangerousness or violence, and strong ties to the community. Mem. Op., ECF No. 166 at 34. Mr. McAbee argues, though, that the Court's finding that he was a law enforcement officer should not count against him because he chose to not attack Officer A.W. or Officer C.M. in particular ways at particular times on January 6. *See* Def.'s Mot., ECF No. 191 at 20-21.

Mr. McAbee misunderstands the Court's prior Memorandum Opinion. There, the Court explained that his law enforcement background weighed against him because he had a "responsibility to uphold and enforce the law" and "an understanding of what constitutes a violation of that law." Mem. Op., ECF No. 166 at 35. Even if he disputes the physical altercations with Officers A.W. and C.M., Mr. McAbee cannot seriously dispute that the video evidence demonstrates that he breached the interior of the

---

[9] The Court again notes that the weight of the evidence "is the least important" factor. *United States v. Padilla*, No. CR 21-214 (JDB), 2021 WL 1751054, at *7 (D.D.C. May 4, 2021) (quoting *United States v. Gebro*, 948 F.2d 1118, 1121-22 (9th Cir. 1991)).

Capitol building, that he was carrying a weapon inside the building, and that he had some sort of physical and violent engagement with law enforcement officers. As a law enforcement officer, he should understand the gravity and egregiousness of such conduct—but nevertheless, he chose to act in this manner. It is no "Catch-22" that the Court takes seriously charges that someone tasked with enforcing the law has shirked that responsibility.

However, Mr. McAbee offers some new and material information bearing on Section 3142(g)(3). Specifically, he has an employment offer from NEURO TOUR Physical Therapy, Inc, located in Marietta, Georgia. Def.'s Mot., ECF No. 191 at 24. He explains that he may work remotely in this position while under home detention with GPS monitoring. *Id.* at 25. The Bail Reform Act specifically instructs the Court to consider a defendant's employment situation in consideration of Section 3142(g)(3), *see* 18 U.S.C. § 3142(g)(3)(A); and the D.C. Circuit has recently affirmed that an offer of employment if released is "some credible evidence contrary to the statutory presumption," *United States v. Gamble*, 810 F. App'x 7, 8 (D.C. Cir. 2020).

Because the Government does not offer any further evidence regarding Mr. McAbee's dangerousness as to this factor, *see generally* Gov't's Opp'n, ECF No. 194; *see also* 18 U.S.C. § 3142(f); the Court re-weighs this factor and determines that

Section 3142(g)(3) weighs neither in favor nor against detention.

### D. The Nature and Seriousness of the Danger to Any Person or the Community

Finally, Mr. McAbee contends that the Court erred in its consideration of Section 3142(g)(4). He argues that: (1) the Court made its determination by pronouncing his factual guilt; and (2) the Court sidestepped certain "uncontroverted video evidence." The Court rejects both arguments.

The Court made no determination as to Mr. McAbee's guilt or innocence. Instead, as explained *supra*, the Court considered the multiple videos, photographs, co-worker identifications, and physical evidence that law enforcement obtained. *See* Mem. Op., ECF No. 166 at 32-33. The Court recognized that several facts are uncontroverted based on this evidence, such as Mr. McAbee's presence in the Lower Western Terrace of the U.S. Capitol and his carrying of the metal-knuckled gloves while physically engaging with MPD officers. *See id.* The Court also recognized that there are ambiguities that it could not resolve, such as what occurred after Mr. McAbee and Officer A.W. tumbled down the staircase. *See id.* at 30.

Moreover, the "uncontroverted" points that Mr. McAbee offers in his Motion for Reconsideration were all already considered and addressed by the Court. *Compare* Def.'s Mot., ECF

No. 191 at 23-24, *with* Mem. Op., ECF No. 166 at 23-24 (baton), *and id.* at 29 ("Mr. McAbee placed his hands on Officer A.W.'s legs and torso as the officer was lying on the ground."), *and id.* at 30 ("Mr. McAbee stands to confront Officer C.M. and begins swinging his arms and hitting the officer."). Far from determining Mr. McAbee's guilt, the Court fairly considered what the evidence does and does not show at this time.

Therefore, the Court determines that this final Section 3142(g) factor weighs against Mr. McAbee and in favor of his continued pretrial detention.

## IV. Conclusion

After examining Mr. McAbee's arguments to reconsider the December 2021 Memorandum Opinion, the Court finds, by clear and convincing evidence, that the Section 3142(g) factors weigh in favor of pretrial detention and that no condition or combination of conditions will reasonably assure the safety of any other person and the community were Mr. McAbee to be released pending trial. Accordingly, Mr. McAbee's motion is **DENIED**. Mr. McAbee shall remain detained pending trial.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **September 3, 2022**