# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 21-cr-35 (RC)** |
| **v.** | : | |
| | : | |
| **RONALD COLTON MCABEE,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM PRETRIAL DETENTION

Defendant Ronald Colton McAbee seeks an order revoking his pretrial detention and granting his immediate release from pretrial custody, based on the length of time for which he has been detained. ECF No. 279 (the "Motion"). However, the defendant himself is responsible for or has agreed to a large portion of the time that has elapsed between his arrest and the scheduled trial date in this case. And, the evidence supporting the defendant's detention is strong. Nothing about the defendant's continued detention violates due process. The Court should therefore deny the motion.

## I.    BACKGROUND

### A.  The Defendant's Conduct On and Around January 6, 2021

The charges against McAbee stem from his participation in the breach of the U.S. Capitol on January 6, 2021. On that date, a joint session of Congress had convened in order to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. As the proceedings continued, a large crowd gathered outside of the Capitol and by approximately 2:12 p.m., individuals in the crowd forced entry into the U.S. Capitol

building, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts. Members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers and the joint session of Congress was effectively suspended until shortly after 8:00 p.m., when unauthorized individuals had been removed from the Capitol building and grounds and members of Congress were able to return to the House and Senate chambers. *See* ECF No. 108 at 3-4.

At the end of December 2020 and the beginning of January 2021, McAbee, then a deputy sheriff with the Williamson County (Tennessee) Sheriff's Office, and an associate ("Associate-1") made arrangements to travel to Washington, D.C. on January 6, 2021. On December 31, 2020, Associate-1 texted a picture of a knife, brass knuckles, and a firearm magazine to McAbee, along with the comment "That's what I'll carry in my pocket." The following exchange ensued:

| | |
|---|---|
| **MCABEE:** | How can I get some knuckles |
| **ASSOCIATE-1:** | Amazon is quick. |
| **MCABEE:** | So I've got a tire repair kit and the t handle tire puncture is a great tool |
| **ASSOCIATE-1:** | Lol this is true! |

Associate-1 then sent a link to an Amazon listing for "Steel Outdoor Reinforced Brass Knuckle Motorcycle Motorbike Powersports Racing Textile Safety Gloves," along with the comment "Just ordered these." Approximately 24 minutes later, McAbee texted Associate-1, asking "could you buy those gloves in a medium and I pay you back?" to which Associate-1 responded that he could. McAbee also informed Associate-1 that he would be wearing his "vest." *See* ECF No. 125-1 at 3-5, 17, 44.

2

At another point in the conversation, Associate-1 told McAbee that he "had to explain to [my child] last night why I was going to DC and what could happen.  This is my fight so he doesn't have to fight."  McAbee responded "I will rise or fall along side you.  This is for future generations." EF No. 125-1 at 14-15.

On January 6, 2021, McAbee wore the aforementioned "knuckles" – brass knuckled gloves – and "vest" – a law enforcement ballistic vest – to the Capitol grounds.  By at least 4:27 p.m., McAbee was present on the Lower West Terrace of the Capitol building, while police officers, including Metropolitan Police Department ('MPD') officers A.W., B.M., and C.M. were attempting to expel rioters from a passageway that provided access to the interior of the Capitol building from the Lower West Terrace (the "Tunnel").  At that time, the officers were positioned in an archway that marked the entrance to the Tunnel (the "Archway") and hundreds of individuals had gathered outside of the Archway, some of whom were throwing and swinging various objects at the group of law enforcement officers.  *See* ECF No. 108 at 4-5.

In a 90-second time period, from approximately 4:27:00 to 4:28:30, Officers A.W., B.M., and C.M. were brutally assaulted by the rioters, including the defendant.  Specifically, Officer A.W. was knocked to the archway ground by codefendant Justin Jersey, and then had his baton snatched out of his hands by another rioter – codefendant Jeffrey Sabol.  While Officer A.W. was laying on the ground of the archway, another rioter – codefendant Jack Wade Whitton – began striking at Officer B.M. with a crutch, kicked at Officer A.W., and, assisted by Sabol and codefendant Logan Barnhart, pulled Officer B.M. out of the Archway, over Officer A.W., and into the crowd where other rioters – including codefendants Peter Stager and Mason Courson – began beating Officer B.M. with objects, including a flagpole and a baton. *See id.* at 5.

McAbee then joined the attack..  As Officer A.W. lay on the ground, McAbee grabbed at Officer A.W.'s leg and torso, while codefendant Clayton Ray Mullins grabbed Officer A.W.'s other leg and engaged in a tug-of-war with officers who were trying to pull Officer A.W. back in to the Archway, as depicted in the images below.



*Government Exhibit 1.1* [1]

---

[1] Government Exhibits 1-4, of which Government Exhibits 1.1, 2.1, 2.2, 3.1, 3.2, and 4.1 are still images, were admitted into evidence in connection with the detention hearing conducted on September 22, 2021.



*Government Exhibit 2.1*

*See id.* at 5-6

Officer C.M. stepped out of the Archway in an attempt to come to the aid of Officers A.W. and B.M.  McAbee then stood upright and began shouting and swinging his arms at Officer C.M., as depicted in the images below:



*Government Exhibit 2.2*



*Government Exhibit 3.1*

*See id.* at 7-8.

When Officer C.M. attempted to push McAbee aside with a baton, codefendant Michael

Lopatic emerged from the crowd, climbed over a handrail, charged at Officer C.M., and repeatedly

punched Officer C.M.  At that point, McAbee turned back to Officer A.W., who was still supine,

and grabbed Officer A.W.'s torso, pulling him out of the Archway.  The two slid down a set of stairs and into the crowd together, with McAbee on top of Officer A.W. for approximately 25 seconds, as depicted in the images below:



*Government Exhibit 4.1*[2]

---

[2] Exhibit 4.1 is a still image from the BWC footage of Officer A.W.



*Government Exhibit 3.2*

*See id.* at 8-9.

In the days following January 6, 2021, McAbee expressed pride in his actions.  On January 7, 2021, he texted another associate ("Associate-2") a picture of himself smiling next to a newspaper with the headline "INSURRECTION."[3] Approximately and hour and a half later, he texted "I've shed blood for my country.  By the hands of the swamp.  I will shed much more in the days to come.  But I will not forget the Oath I swore years ago to protect the America I once knew. / necisque libertas [liberty or death]."  *See* ECF No. 125-4 at 1, 3; ECF No. 125-5.  Similarly, on January 10, 2021, while discussing whether he and/or Associate-1 would be attending the inauguration, Associate-1 stated, "Trump will be the one inaugurated," to which McAbee replied, "I call for secession!"  *See* ECF No. 125-1 at 88.

---

[3] McAbee texted the same picture to Associate-1.  *See* ECF No. 125-1 at 71.

### B.  Procedural History

On August 17, 2021, the defendant was arrested in his home state of Tennessee on an arrest warrant issued from the United States District Court for the District of Columbia by Magistrate Judge Robin M. Meriweather.  A grand jury in the District of Columbia subsequently returned a superseding indictment (the Third Superseding Indictment) charging the defendant with one count of Inflicting Bodily Injury on Certain Officers or Employees and Aiding and Abetting, in violation of 18 U.S.C. §§ 111(a)(1) and (b) and 2 (Count Nine); one count of Assaulting, Resisting, or Impeding Certain Officers or Employees, in violation of 18 U.S.C. § 111(a)(1) (Count Twelve); one count of Obstruction of Law Enforcement During Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) (Count Fourteen), one count of Knowingly Entering or Remaining in any Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A) (Count Eighteen), one count of Disorderly and Disruptive Conduct in any Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A) (Count Nineteen), one count of  Engaging in Physical Violence any Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A) (Count Twenty), and one count of Violent Entry and Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count Twenty Four).[4]

On August 17, 2021, during the defendant's initial appearance in the Middle District of Tennessee, the government made a motion to detain the defendant without bond pending trial

---

[4] The previous version of the indictment (the Second Superseding Indictment), returned prior to the defendant's arrest, charged the defendant with the same offenses, but contained an additional violation of 18 U.S.C. § 231(a)(3).  The conduct underlying the two § 231(a)(3) counts in the Second Superseding Indictment – the defendant's obstruction, impeding, or interference with Officer A.W. (Count Eight) and the defendant's obstruction, impeding, or interference with Officer C.M. (Count Ten) – is now encompassed by Count Fourteen of the Third Superseding Indictment.

pursuant to 18 U.S.C. §§ 3142(e), (f)(1)(A), and (f)(1)(E).  A detention hearing was held on August 26, 2021, and resumed on September 8, 2021, during which the Magistrate Judge Jeffrey S. Frensley denied the government's detention motion and issued an order releasing the defendant with certain conditions. On September 8, 2021, the government appealed that order to this Court and asked this Court to stay the defendant's release pending a hearing on the appeal. (ECF No. 108).

The Court granted that motion, received briefing from the parties (ECF Nos. 113, 116), and, on September 22, 2021 and October 13, 2021, conducted a thorough detention hearing.  On October 13, 2021, the Court ordered the defendant detained pending trial pursuant to 18 U.S.C. § 3142(e)(1), finding that no conditions or combination of conditions of release can assure the safety of the community were the defendant to be released.  *See* October 13, 2021 Transcript at 3:18-4:1. On December 12, 2021, the Court issued a lengthy opinion setting forth its findings and reasoning in more detail.  ECF No. 166; *United States v. McAbee*, No. CR 21-35 (EGS), 2021 WL 6049909, (D.D.C. Dec. 21, 2021).

On May 9, 2022, the defendant filed a motion seeking reconsideration of the Court's decision, which the Court denied on September 3, 2022.  ECF Nos. 191, 218; *United States v. McAbee*, No. CR 21-35 (EGS), 2022 WL 4016616 (D.D.C. Sept. 3, 2022).  McAbee subsequently appealed the Court's denial of his motion to the D.C. Circuit, which affirmed the district court's order.  *United States v. McAbee*, No. 22-3066, 2022 WL 17101252, at *1 (D.C. Cir. Nov. 22, 2022).

On February 7, 2022, Judge Sullivan, to whom this matter was then assigned, set a November 30, 2022 trial date for all of the defendants. On August 1, 2022, Judge Sullivan issued a pre-trial scheduling order maintaining the November 30, 2022 trial date with respect to five

defendants, including McAbee.  ECF No. 205.  With respect to the remaining defendants, the Court directed the parties to file a notice of dates they were available for trial in March, September, and October 2023.  *Id.*  On August 8, 2022, McAbee filed an unopposed motion, seeking to join the second, yet-to-be-scheduled trial group ("Group 2"), in light of his attorney's conflict with the November 2022 trial date.  ECF No. 207.  Prior to filing that motion, defense counsel consulted with the Assistant United States Attorneys ("AUSAs") assigned to the case, who advised that two of the AUSAs were unavailable in March 2023.  Defense counsel indicated that he would advise McAbee of this and subsequently communicated that McAbee would prefer to move to Group 2 so that defense counsel could remain on the case.  The government and counsel for the Group 2 defendants then filed a notice informing the Court that all parties were available to commence trial starting on September 25, 2023.  ECF No. 209.

On October 17, 2022, this matter was reassigned from Judge Sullivan to this Court.  On December 2, 2022, this Court held a status conference, at which it indicated that it had availability to conduct a trial prior to September 2023, including in May, July, or August.  On January 6, 2023, as directed by the Court, the parties submitted a status report, informing the Court that all parties – including McAbee -- wanted to maintain the September 25, 2023 trial date.[5]  ECF No. 267.

On February 2, 2023, the defendant filed a motion seeking his immediate release from pretrial detention on the grounds that the length of his detention violates his due process rights.[6]

---

[5] Indeed, while no defendant objected to maintaining the September 2023 trial date, McAbee's counsel indicated that he had a conflict with another trial that would not allow him to move this trial earlier than September 2023.

[6] The defendant also argues that the Central Virginia Regional Jail's ("CVRJ's") policies regarding attorney visitation and access to electronic discovery prevent him from meaningfully participating in the preparation of his defense and therefore require his release pursuant to with 18 U.S.C. § 3142(i) or § 3142(f).  ECF No. 279 at 21-23.  However, since the filing of the Motion, the defendant

## II.    ARGUMENT

### A.  Applicable Law

The government may detain a defendant prior to trial consistent with the Due Process Clause of the Fifth Amendment so long as confinement does not amount to "punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535, (1979); *see also United States v. Salerno*, 481 U.S. 739, 746, (1987) (pretrial detention must be "regulatory, not penal").   "Pretrial detention of a defendant, when of reasonable duration, serves important regulatory purposes, including the prevention of flight and the protection of the community from a potentially dangerous individual." *United States v. Millan*, 4 F.3d 1038, 1043 (2d Cir. 1993).

In order to assess "whether the length of pretrial detention has become constitutionally excessive," courts weigh three factors: "(i) the length of detention; (ii) the extent of the prosecution's responsibility for the delay of the trial; and (iii) the strength of the evidence upon which the detention was based"[7]   *Millan*, 4 F.3d at 1043 (citing *United States v. Orena*, 986 F.2d 628, 630 (2d Cir.1993)); *see also United States v. Gamble*, No. CR 19-348 (CKK), 2020 WL 588323, at *10 (D.D.C. Feb. 6, 2020), *vacated and remanded on other grounds*, 810 F. App'x 7 (D.C. Cir. 2020) ("Courts have considered several factors in making that determination, including (1) the length of the detention, (2) the extent of the prosecution's responsibility for the delay, and (3) the strength of the evidence on which the detention was originally based.")

---

has been transferred from the CVRJ to a different facility in the Virginia area and he has not raised additional arguments concerning that facility's policies.   Thus, the defendant's complaints regarding the CVRJ's policies are now moot.

[7] Some courts enumerate a fourth factor, "the gravity of the charges."  *United States v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000).  This is similar to the "nature and circumstances of the offense" under 18 U.S.C. § 3142(g) and therefore is also part of the assessment of the "strength of the evidence upon which the detention was based."

## B.  Argument

### 1.  Length of Detention

Approximately 25 months will have elapsed between McAbee's arrest in August 2021 and his currently scheduled trial date in September 2023.[8]  While this time period is not insignificant, courts have found that longer periods of detention do not violate due process.  *See Sharps v. United States*, 246 A.3d 1141, 1158 n.89 (D.C. 2021) (collecting cases in which time periods ranging from 20 months to 52 months did not violate due process).  And, even if the length of a defendant's pretrial detention weighs in his favor, it is seldom dispositive, particularly when the defendant is detained, as McAbee is, based on a court's determination that he poses a danger to the community. *See United States v. Orena*, 986 F.2d 628, 631 (2d Cir. 1993) ("the length of a detention period will rarely by itself offend due process. Moreover, the constitutional limits on a detention period based on dangerousness to the community may be looser than the limits on a detention period based solely on risk of flight. In the former case, release risks injury to others, while in the latter case, release risks only the loss of a conviction.")

### 2.  Responsibility for Delay

Prior to filing the Motion, McAbee never sought a trial date earlier than September 2023 and has consistently not objected to the tolling of time pursuant to the Speedy Trial Act.  *See, e.g.,* Minute Entries for Sept. 23, 2021, Nov. 22, 2021, Feb. 7, 2022, Apr. 5, 2022; ECF No. 269. McAbee had the opportunity to go to trial in this matter four months ago, in November 2022. Instead of taking this opportunity, he sought to join a later trial date (with the knowledge that this trial would likely not occur until ten or eleven months after November trial date).  McAbee had

---

[8] The Government's current estimate of the length of its case-in-chief is three weeks.  *See* ECF 209.

further opportunity to seek an earlier trial date when this Court offered to conduct a trial in May, July, or August 2023, but did not avail himself of it.  His own failure to take advantage of the earlier trial dates offered to him should not be attributed to the government.  *See Orena*, 986 F.2d at 631 ("[T]he government is not primarily responsible for the delay in the instant matter. As noted, defense counsel initially declined to seek an early trial date, or any date at all. Moreover, defense counsel declined to accelerate the trial date from October 5 to September 14 at the suggestion of [the judge].").  *Cf. United States v. Taplet*, 776 F.3d 875, 881 (D.C. Cir. 2015) (no Sixth Amendment violation occurred where the defendant "either joined in or requested many of the continuances, and he waited fourteen months after his arraignment before filing a motion to dismiss under the Speedy Trial Act."); *United States v. Bikundi*, 926 F.3d 761, 780 (D.C. Cir. 2019) ("the fact that [the defendant] did not assert her speedy trial rights until she filed a motion to dismiss sixteen months after her arraignment also weighs in the government's favor.")

Yet McAbee attempts to absolve himself from responsibility for the amount of time that has elapsed between his arrest and his scheduled trial date first by blaming the government for the voluminous and complicated nature of discovery relating to cases arising out of the breach of the U.S. Capitol, and second by arguing that the unavailability of the AUSAs assigned to the case in March 2023 forced the Court to set a later trial date.  Both arguments are self-serving; it is clear that that primary reason for the delay in McAbee's trial date is his counsel's unavailability. McAbee cannot use his own counsel's unavailability as grounds for his release.  *See United States v. El-Hage*, 213 F.3d 74, 80 (2d Cir. 2000) ("The district court did not find any delay attributable to the government. Indeed, it was defense counsel who, when [the Court] suggested it, declined an early trial solely on [certain of the] counts.").

14

*First*, in an investigation like this one, which involves voluminous amounts of video and other electronic evidence, delays caused by the production and review of discovery are equally attributable to the defense as they are to the prosecution. Prior to McAbee's arrest in August 2021, the government had already made five productions of materials relating to the assaults with which McAbee is charged, and has continued to make productions as relevant materials are identified, both case-specific and relevant to the events of January 6 more generally. *See El-Hage,* 213 F.3d at 80 ("In this case, the prosecution appears to bear very little responsibility for the delay of trial. Everyone involved agrees that the underlying case is of exceptional complexity and that discovery and trial preparation are of necessity extremely time-consuming for both sides.").

*Second*, McAbee's assertion that "because the Government counsel was not availab[le], the Court set the trial for the second group on September 25, 2023," Motion at 13, is not true. Although the AUSAs informed *defense counsel* that two of them were unavailable for trial in March 2023, this representation was never made to the Court, as the parties submitted a joint notice of availability seeking a trial date on September 25, 2023 or later. ECF No. 209. McAbee's counsel agreed to the filing (and, in fact, requested that the parties not seek a date earlier in September so as not to conflict with an August trial he had scheduled) and the Court never cited (or knew of) the AUSAs' unavailability in setting the September 25, 2023 trial date. Nor did McAbee's counsel request that the Court schedule an earlier trial date despite the AUSAs' unavailability.

### 3.   Strength of the Evidence Underlying the Detention Determination

In two lengthy opinions, one of which was affirmed by the D.C. Circuit, Judge Sullivan carefully analyzed the evidence and arguments presented by both parties and concluded that "clear and convincing evidence support[ed] a finding that no condition or combination of conditions will

reasonably assure the safety of the community" and therefore ordered that McAbee be detained pending trial.  ECF No. 166 at 18-19.  *See also* ECF No. 218 at 31.  While he continues to dispute what the evidence presented at his detention hearing showed, Motion at 14-18, McAbee provides no new information calling into question Judge Sullivan's earlier opinions.   The evidence underlying Judge Sullivan's detention determination thus remains strong.

## CONCLUSION

By failing to avail himself, on multiple occasions, of trial dates earlier than that currently scheduled, McAbee has manufactured the conditions that he now claims warrant his release. The primary responsibility for the delay between his arrest and trial lies with McAbee. The Court should therefore deny his motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      */s/ Benet J. Kearney*_____
Colleen D. Kukowski
DC Bar No. 1012458
Benet J. Kearney
NY Bar No. 4774048
Matthew Moeder
MO Bar No. 64036
Assistant United States Attorneys
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-2646 / (212) 637 2260 / (816) 426-4103
Colleen.Kukowski@usdoj.gov
Benet.Kearney@usdoj.gov
Matthew.Moeder@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that a copy of the Government's Opposition to Defendant's Motion for Release From Pretrial Detention was served on all counsel of record via the Court's electronic filing service.

_/s/ Benet J. Kearney_____
BENET J. KEARNEY
Assistant United States Attorney

Date: March 31, 2023