UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RONALD COLTON MCABEE,<br><br>Defendant. | Case No. 21 Cr. 35 (RC) |

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to the sentencing memorandum submitted by the defendant, Ronaldo Colton McAbee ("Def. Sent. Memo"), ECF No. 431, specifically to address the defendant's claims regarding his restitution obligations.

**I.  The Court Should Find McAbee Jointly and Severally Liable for $30,165.65 in Restitution to the Metropolitan Police Department**

McAbee makes several arguments regarding the amount of restitution he should be ordered to pay with respect to Officer Wayte's injuries and medical care. *First*, he argues that he should not be required to pay *any* portion of the amount MPD paid to Officer Wayte attributable to time that Officer Wayte was off from work, recovering from the assaults he sustained on January 6, 2021, claiming that such payments are not recoverable under 18 U.S.C. § 3663A. *See* Def. Sent. Memo at 20. But this is not the case. In fact, courts *must* order defendants to make restitution "to reimburse the victim for income lost by such victim as a result of such offense," and "if a victim as received compensation from . . .any other source with respect to a loss, the court shall order that restitution to be paid to the person who provided or is obligated to provide the compensation." 18 U.S.C. §§ 3663A(b)(2)(C), 3664(j)(1). That is exactly what happened here.

1

Due to Officer Wayte's injuries and required recovery time, MPD made "performance of duty" ("POD") payments, that is, workers' compensation payments, to cover the time during which he was unable to work. *See* U*nited States v. Lewis*, 155 F. App'x 897, 898 (7th Cir. 2005) (upholding restitution for a deputy sheriff's "injury and resulting time away from the job" due to injuries sustained in connection with the defendant's arrest). Nor does the defendant's citation to *United States v. Douglas*, 525 F.3d 225 (2d Cir. 2008) support his argument. In that case, the Second Circuit upheld a district court's order including restitution for a murder victim's father's "expenditure of accrued annual leave to assist in the investigation and attend court proceedings." *Id.* at 254. It did not find that, had the father's employer (or another entity) reimbursed him for that off, such payments were not covered by Sections 3663A and 3663. Indeed, had Officer Wayte not been compensated by MPD, he would have been required to expend his own leave or to endure lost income, two situations which the defendant all but concedes are covered by the MVRA.

*Second*, McAbee asserts that restitution for Officer Wayte's injuries should be apportioned amongst culpable defendants, and that he should be ordered to pay a lesser portion. Def. Sent. Memo at 19-20. But, the costs associated with Officer Wayte's injuries and recovery are not parceled out by specific wound. *See* Sent. Ex. B. Nor has McAbee offered any metric for doing so. It is entirely appropriate for the Court to order joint and several liability with Officer Wayte's other assailants, particularly when McAbee played such a central role in the assault. And, it is clear that a significant portion of the costs associated with Officer Wayte's injuries are not solely attributable to the laceration to his head.

## II. The Court Should Order McAbee to Pay $2,000 to the Architect of the Capitol

McAbee next argues that, because he himself did not break any doors or directly damage

Capitol property, he did not contribute to the more than $2.9 million[1] in damage to the Capitol building and grounds and costs borne by the United States Capitol Police as a result of the January 6, 2021 riot.   McAbee's argument ignores the role of each and every rioter in the events of January 6.   While the government has demonstrated that he is responsible, in part, for injuries to a particular police officer, those who damaged property could not have done so without the weight of the mob behind them and the Capitol building could not be secured until every last rioter was removed.   He is therefore responsible for a portion of those losses as well.

To determine whether a criminal defendant bears responsibility for the harm the offense caused, the relevant inquiry is the scope of the defendant's offense conduct and the harm the victim suffered as a result. *See United States v. Hughey,* 495 U.S. 411, 418 (1990) (Congress "authorize[d] an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction"). Broader restitution is permitted where the offense of conviction contains as an element a scheme, conspiracy, or pattern of criminal activity, 18 U.S.C. § 3663(a)(2) (VWPA); 18 U.S.C. § 3663A(a)(2) (MVRA), or if a plea agreement allows for a greater amount. *United States v. Thomas*, 862 F. Supp. 2d 19, 21 (D.D.C. 2012).

Significantly for January 6 cases, a "reasonable estimate" or reasonable approximation of loss is sufficient, "especially in cases in which an exact dollar amount is inherently incalculable." *United States v. Gushlak*, 728 F.3d 184, 196 (2d Cir. 2013); *see United States v. Sheffield*, 939 F.3d 1274, 1277 (11th Cir. 2019) (estimating the restitution figure is permissible because "it is sometimes impossible to determine an exact restitution amount") (citation omitted); *see also*

---

[1] This figure does *not* include losses sustained by MPD, including the costs of Officer Wayte's care discussed above.

*Paroline*, 572 at 459 (2014) (observing in the context of the restitution provision in 18 U.S.C. § 2259 that the court's job to "assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader casual process that produced the victim's losses . . . cannot be a precise mathematical inquiry"). "The determination of an appropriate restitution amount is by nature an inexact science." *United States v. Brewer*, 983 F.2d 181, 185 (10th Cir. 1993). "[W]here the precise amount [of restitution] owed is difficult to determine, 18 U.S.C. § 3664 authorizes the court to reach an expeditious, reasonable determination of appropriate restitution by resolving uncertainties with a view toward achieving fairness to the victim." *Id*. (citing S. Rep. No. 532, 97th Cong., 2d Sess. 31, reprinted in 1982 U.S. Code Cong. & Admin. News 2515, 2537) (cleaned up).

The January 6 cases present a relatively common restitution question about proximate causation—how to recompense victims for their losses where multiple defendants' actions have caused harm. Although the absence of a particular defendant, or even dozens of defendants, from the mob of rioters may have made little difference to the damages caused by the riot, that does not mean that any particular rioter may avoid restitution liability because his personal contribution to the aggregate loss is *de minimis*. If that were so, most rioters would escape restitution altogether. Given the broad compensatory goals of the restitution statutes, Congress could not possibly have intended that a massive, unprecedented riot causing millions of dollars of loss would not trigger *any* restitution from those who criminally participated.

The Supreme Court confronted an analogous issue in *Paroline*. The defendant was one of many, perhaps thousands, of individuals who possessed the child victim's pornographic images, and the victim sought restitution from the defendant in the full amount of her damages. *Id.* at 449.

Interpreting a restitution statute for child pornography offenses that shares the same causation language as the VWPA and MVRA, the Supreme Court held that restitution is available "only to the extent the defendant's offense proximately caused a victim's losses." *Paroline*, 572 U.S. at 448 (interpreting restitution under 18 U.S.C. § 2259). Proximate cause, the Court explained, is "a flexible concept that generally refers to the basic requirement that there must be 'some direct relation between the injury asserted and the injurious conduct alleged." *Id*. at 444 (cleaned up). "A requirement of proximate cause thus serves, *inter alia,* to preclude liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity." *Id.* at 445.

The Court then addressed the "difficult question" of how to determine what losses a defendant had caused. *Id.* at 449. The Court recognized that strict but-for causation—the traditional causal requirement—cannot be established when a victim's images are widely distributed across the internet: "Even without [the defendant's] offense, thousands would have viewed and would in the future view the victim's images, so it cannot be shown that her trauma and attendant losses would have been any different but for [the defendant's] offense." *Id.* at 450. Yet the Court refused to deny restitution on that ground, explaining that "there can be no doubt Congress wanted victims to receive restitution for harms like this." *Id*. at 457. "While it is not possible to identify a discrete, readily definable incremental loss [the defendant] caused, it is indisputable that he was a part of the overall phenomenon that caused [the victim's] general losses." *Id*.

The Supreme Court elaborated that while "[e]very event has many causes, . . . only some of them are proximate, as the law uses that term." *Id*. at 444. Proximate cause requires that an event be both "an actual cause or cause in fact" and "that there must be some direct relation between the

5

injury asserted and the injurious conduct alleged." *Id*. (cleaned up). "Proximate cause is often explicated in terms of *foreseeability or the scope of the risk created by the predicate conduct*." *Id*. at 445 (emphasis added).

Requiring strict "but for" causation in Paroline's case inadequately captured his responsibility for the victim's harm. The victim's losses (as here) were caused by the aggregate criminal conduct of an unknowable number of offenders, and the government was generally unable to demonstrate that any individual defendant's offense conduct was a cause in fact of the victim's loss. To address the statutory command that a defendant whose criminal conduct contributed to the loss must pay restitution, the *Paroline* Court addressed "aggregate causation theories," which hold that "when the conduct of two or more actors is so related to an event that their combined conduct, viewed as a whole, is a but-for cause of the event, and application of the but-for rule to them individually would absolve all of them, the conduct of each is a cause in fact of the event." 572 U.S. at 451 (cleaned up). The theory posits that "a wrongdoer's conduct, though alone insufficient to cause the plaintiff's harm, is, when combined with conduct by other persons, more than sufficient to cause the harm." *Id*. at 452. Such "aggregate causation theories … are []relevant to determining the proper outcome in cases like this." *Id.* at 456. So where a defendant's criminal conduct contributes, even minimally, to "the victim's general losses," he proximately caused that loss even if "it is not possible to identify a discrete, readily definable incremental loss he caused." *Id*. at 456-57. "[W]here it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court … should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Id*. at 458.

The *Paroline* Court recognized that "[t]his approach is not without its difficulties," "involv[ing] discretion and estimation." *Id*. at 462. But the Court emphasized that "[d]istrict courts routinely exercise wide discretion both in sentencing as a general matter and more specifically in fashioning restitution orders," and recognized that courts "can only do their best to apply the statute as written in a workable manner." *Id*. As a result, the Court explained, there can be no "precise algorithm" for computing individual restitution awards. *Id*. at 459-60.

The same principles apply here. Although the government has identified a specific officer for whose injuries McAbee is liable, McAbee's offenses still proximately contributed for additional losses the victims suffered. When properly aggregated, each January 6 defendant's conduct was a proximate cause of the losses sustained during the Capitol breach. Each rioter was part of a collective whole that overran the outnumbered officers stationed at the Capitol, dissipating their lines, and giving others the opening to hit and break throughout the building. Whereas an individual trespasser, acting alone or in a small group, might not reasonably foresee that his trespass would lead to destruction and injury, it was reasonably foreseeable for such trespass in the context of January 6 to result in the damages that occurred. The police officers sought to protect the Capitol not from a single trespasser, not from several, and not even dozens, but from thousands, all of whom contributed incrementally to the harm which, in the aggregate, harmed multiple victims. Each defendant's own conduct played a part in the causal process, and each defendant is responsible for the foreseeable "consequences and gravity" of that conduct. *Paroline*, 572 U.S. at 462. *See also United States v. Griffin,* 21-cr-0092 (TNM), Tr. 06/17/2022 at 41 ("While there's no evidence that you damaged property yourself and you did not even enter the Capitol Building, I do believe that the combined actions from you and others caused significant damage to the

inauguration stage itself, and I do believe the actions of the rioters complicated law enforcement's efforts to prevent damage to the Capitol Building itself."); *United States v. Webster*, 21-cr-208 (APM), Tr. 09/01/2022 at 23-25 ("You know, given the nature of the overall conduct, you can't have any particular person responsible for all $2 million, but it's certainly safe to say that the $2 million in damage could not have happened but for the collective action of each individual person who was there on January the 6th. And so everybody who was there in a sense, whether they directly destroyed property or not, certainly contributed and caused it, and so I think the amount of $2,000 that's been requested is fair in terms of a restitution amount, for a total amount of $2,060 as restitution in this case."); *United States v. Sargent*, 21-cr-258 (TFH), Tr. 12/12/2022 at 61-63 (You saw the damage being done. You were on the tower. You saw the people going through the barricades, the police being attacked, the tear gas being expended, officers fleeing. You were all part of that in the midst of that. In fact, you forced your way to the front of the line to join in that. So I think it's appropriate that you be assessed restitution under the law.")[2].

---

[2] The court reduced the restitution from $2,000 to $500 in this case based on the defendant's poverty. *Id.*

### III. Conclusion

The Court should (A) order McAbee to pay $2,000 in restitution to the Architect of the Capitol and (B) find McAbee jointly and severally liable for $30,165.65 to MPD.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

*/s/Benet J. Kearney*
Alexandra F. Foster
Benet J. Kearney
Assistant United States Attorneys
601 D Street, N.W.
Washington, D.C. 20530
Alexandra.Foster@usdoj.gov / (619) 546-6735
Benet.Kearney@usdoj.gov / (212) 637 2260